350 So.2d 865 (1977)
STATE of Louisiana Through the DEPARTMENT OF HIGHWAYS
v.
OLINKRAFT, INC.
No. 58451.
Supreme Court of Louisiana.
May 16, 1977.
On Rehearing September 19, 1977.
Rehearing Denied October 21, 1977.
*866 James H. Napper, II, Shotwell, Brown & Sperry, Monroe, for defendant-applicant.
William W. Irwin, Jr., Jerry F. Davis, Bernard L. Malone, Jr., Johnie E. Branch, Jr., Baton Rouge, for plaintiff-respondent.
Edward B. Poitevent, Ernest A. Carrere, Jr. and Lucius F. Suthon, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for amicus curiae.
SUMMERS, Justice.
On September 16, 1975 the Department of Highways instituted this expropriation suit by a declaration of taking  quick taking  procedure to acquire in full ownership three small parcels of property belonging to the defendant, Olinkraft, Inc. The taking is in connection with the Bayou Deloutre Bridge Project in Union Parish involving the construction of a new bridge and realignment of the highway to provide the necessary approaches.
Based upon the Department's petition and the annexed certificates, the trial judge signed an ex parte order of expropriation dated September 16, 1975, reciting that upon deposit of its estimated value the full ownership of the property, subject to a reservation of minerals in favor of Olinkraft, would be considered expropriated and taken for highway purposes.
Olinkraft filed a timely motion to dismiss alleging 1) that Sections 441 to 460, inclusive, of Title 48 of the Revised Statutes, upon which the expropriation suit is based, are unconstitutional in that they violate the due process provision of the State and Federal Constitutions; 2) the taking of the property in full ownership, rather than a servitude of right of way, was not for a public purpose or in the public interest; 3) alternatively, if it is held that taking in full ownership is a discretionary function of the Department, the taking is an abuse of that discretion; and 4) Olinkraft is entitled to a judicial determination of its rights under the State and Federal Constitutions.
A trial of the motion to dismiss resulted in a rejection of Olinkraft's contentions, and the judgment was affirmed on appeal to the Second Circuit. 333 So.2d 721. Certiorari was granted on Olinkraft's application. La., 338 So.2d 292.

Constitutionality.
Section 2 of Article I of the Louisiana Constitution of 1921 declares that "private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." (emphasis added). Section 15 of Article IV of that Constitution prohibited the divesting of vested rights "unless for purposes of public utility, and for just and adequate compensation previously paid." (emphasis added). These requirements of payment before taking of private property are embodiments of a principle long established in this State. Article 497 of the Civil Code required previous indemnity before one could be deprived of his property for a purpose of public utility. See also Police *867 Jury of Jefferson v. D'Hemecourt, 7 Rob. 509 (La.1844) and State through the Sabine River Authority v. Phares, 245 La. 534, 159 So.2d 144 (1964).
Due process requirements mandated a judicial determination of the necessity for the taking and whether the payment offered was just and adequate compensation before the Department of Highways could enter upon and take possession of property needed for highway purposes. La.Const. art. I, § 6 (1921). Delays occasioned by these requirements undoubtedly retarded highway improvements resulting in the enactment of a constitutional amendment creating an exception to the restraints imposed by the due process and prior payment clauses of the Constitution. This amendment[1] authorized a "taking of property for highway purposes by orders rendered ex parte in expropriation suits prior to judgment therein" with provisions for payment by a deposit in the registry of court of an estimated just and adequate compensation.
To implement this exception to the constitutional limitations on its power of expropriations, and to delegate the sovereign right of expropriation vested in it, the Legislature enacted Sections 441 to 460, inclusive, of Title 48 of the Revised Statutes in 1954. This legislation provided for expropriation by a "Declaration of Taking" permitting the taking, including possession and title, of property for highway purposes prior to judgment in the trial court.
Then in 1974, effective January 1, 1975, Louisiana adopted a new constitution. Section 4 of Article I is the provision pertinent to the contention that Sections 441 through 460 of Title 48 of the Revised Statutes are unconstitutional. Section 4 provides:
"Every person has the right to acquire control, own, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power. Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate [property], except for a public and necessary purpose and with just compensation paid to the owner [and], in such proceedings, [the issue of] whether the purpose is public and necessary shall be a judicial question. In [all] expropriations, [any party shall have] the right to trial by jury to determine compensation and the owner shall be compensated to the full extent of [the] loss. No business enterprise or any of its assets shall be taken for the purpose of [halting competition with government enterprises, except that municipalities may expropriate utilities within their jurisdiction]. Personal effects, other than contraband, shall never be taken. [The provisions of this] Section shall not apply to appropriation of property necessary for levee and levee drainage purposes."
The Legislature amended and reenacted the declaration of taking or quick taking statutes effective January 1, 1975. The major changes resulting from these amendments were additions of several sections (La.Rev.Stat. 48:451.1-51.23) detailing the trial procedure for suits by landowners questioning the State's expropriation. However, the amendments retained the substance of those sections which are pertinent to the issues before the Court in this case, viz:
Sec. 441: Where the department cannot amicably acquire property needed for highway purposes, the department, or its successor, may acquire same by expropriation.
In any suit for the expropriation of property, including both corporeal property and servitudes, the department, or its successor, may acquire the property prior to judgment in the trial court in the manner provided in this Part, (emphasis added).
Sec. 444: The petition shall conclude with a prayer that the property be declared *868 taken for highway purposes. Upon presentation of the petition, the court shall issue an order directing that the amount of the estimate be deposited in the registry of the court and declaring that the property described in the petition has been taken for highway purposes at the time of the deposit, (emphasis added).
Sec. 447: Any defendant desiring to contest the validity of the taking on the ground that the property was not expropriated for a public purpose may file a motion to dismiss the suit within ten days after the date on which the notice was served on him. . . .
Failure to file the motion within the time provided constitutes a waiver of all defenses to the suit except claims for compensation, (emphasis added).
Sec. 460: The plaintiff shall not be divested by court order of any title acquired under these provisions except where such court finds that the property was not taken for a public purpose. In the event of such findings, the court shall enter such judgment as is necessary to compensate the defendant for the period during which the property was in the possession of the plaintiff and to recover for the plaintiff any award paid.
It is seen from Section 4 of Article I of the Constitution of 1974 that prior payment of just compensation is no longer a constitutional requirement to be fulfilled before the Department may take possession. The pertinent language reads: "Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." It is now permitted, therefore, as it was in Section 19.1 of Article VI of the 1921 Constitution, to expropriate if there is a deposit of the just compensation into court for the owner's benefit.
The plan of the quick taking statutes requires that just compensation be "paid to the owner or into court for his benefit" before the taking, the provisions of Section 447 of Title 48 give the owner an opportunity to contest the validity of the taking within ten days, and the provisions of Section 460 of Title 48 authorize the court to set aside the taking and compensate the owner if the taking is not found to be for a public purpose.
In this context the initial expropriation under the quick taking statutes "prior to judgment in the trial court" is in a sense only temporary. La.Rev.Stat. 48:441. The divestiture is contingent. In the meantime the owner is compensated by being paid or the estimate is deposited into the registry of court to his account. Id. Sec. 444. The owner is then given the opportunity to contest the validity of the taking. Id. Sec. 447. And, should this court decide that the taking was not for a public purpose, the department is divested of title and the owner is compensated for the period during which the property was in the Department's possession. Id. Sec. 460. In the interim the owner has the use of the property's estimated value.
Judgment in the trial court is not rendered until the owner is heard and after inquiry and a trial. If the owner is satisfied with the compensation offered, makes no motion to dismiss, and accepts the compensation, the bargain is struck and the Department's title to the property or rights taken is complete.
Considered in the light of the public interest in expediting the construction of highways, the protections against abuse afforded the owner of private property by the quick taking statutes, and the presumption of constitutionality attached to Legislative enactments, these are reasonable statutory implementations of the constitutional authority to expropriate private property and the procedure prescribed does not deny due process. U.S.Const.Amends. 5, 14; La. Const, art. I, § 2 (1974).

Judicial review and necessity for taking.
In State of Louisiana, Through the Department of Highways v. Jeanerette Lumber & Shingle Co., Ltd., La., 350 So.2d 847 (Nos. 58,437 and 58,438, 1977), the decision in State Through the Department of Highways *869 v. Guidry, 240 La. 516, 124 So.2d 531 (1960) was reversed. The Guidry decision had stood for the proposition that when the Department expropriates property under the quick taking statute courts may only determine the adequacy of the compensation and whether the property was taken for a public purpose. On this premise the Guidry court held that it was within the Department's discretion to determine whether there was a necessity to expropriate full ownership or merely a servitude affecting the land. The implication from the Guidry decision was that courts could not review the Department's determination.
In Jeanerette we held to the contrary saying, in effect, that courts could always inquire into the validity of the taking. Jeanerette found that the rights to a permanent servitude of right of way were not for a necessary highway purpose and the order of expropriation was modified accordingly.
The issue is the same in the instant case, and this Court will determine from this record whether the full ownership of the property or a servitude is required by the Department for the highway purposes to which the property is to be put.
At the outset it is noted that only a right of way or servitude was acquired for the existing highway to which the three small parcels involved in this case will be added. Negotiations prior to filing suit disclosed that the Department would accept a servitude if Olinkraft would donate the right of way. When Olinkraft refused to donate the servitude, this suit was filed and full ownership is demanded. Also the certificate of the Board of Highways authorizes the taking of either a servitude or full ownership. This evidence convincingly demonstrates that a servitude would have sufficed to serve the highway purposes for which this property is being taken.
But the Department asserts that full ownership is required in order that the Department may control the right of way corridor and grant permits to electric utilities, pipe lines and the like on and across its rights of way. At times electricity is needed to light the rights of way or provide power for electric pumps at rest areas and power for other unnamed facilities. On occasions in the past, it is said, the Department's right to grant permits has been questioned when only a servitude of right of way was acquired. However, the Court's attention has been called to Section 381 of Title 48 of the Revised Statutes which authorizes the director of the Department, when not inconsistent with the purposes of state highways, to issue permits for the use and occupancy of the rights of way of state highways. Inasmuch as the cited Section 381 gives the Department the right to grant permits whether its right of way is in full ownership or a servitude, its argument for full ownership instead of a servitude is unimpressive.
In addition to the foregoing, the Department's evidence is to the effect that appraisers value a servitude at eighty percent of the full ownership value, thus effecting a twenty percent saving for the Department when servitudes are acquired instead of full ownership. Although this is the theory, the witness observed that it was not always the result in practice. In any event, there is no disadvantage to a servitude pricewise; in fact, a saving is more likely.
On this record there is no showing which would support a taking of full ownership instead of a servitude. Thus, no highway purpose is served by insisting on the more onerous taking. The owner's right of property is not to be unduly violated when the highway purpose can be served with a modified taking.
For the reasons assigned, the judgments appealed from are reversed and set aside and the order of expropriation is modified to vest in the Department a servitude of right of way to the property expropriated in lieu of full ownership.
SANDERS, C. J., dissents with written reasons.
TATE, J., dissents for reasons assigned in State Through Dept. of Highways v. Jeanerette Lumber & Shingle Co., La., 350 So.2d 847 (Docket Nos. 58,437 & 58,438).
CALOGERO, J., dissents for reasons assigned by the Chief Justice.
*870 SANDERS, Chief Justice (dissenting).
This Court granted writs in this expropriation proceeding to consider the applicability of State, Through the Department of Highways v. Guidry, 240 La. 516, 124 So.2d 531 (1960) to our present "quick-taking" statute, LSA-R.S. 48:441 et seq., La., 338 So.2d 292 (1976). Guidry held that our former "quick-taking" statute precluded judicial review of the necessity for such taking. In State, Through the Department of Highways' v. Jeanerette Lumber and Shingle Company, Ltd., La., 350 So.2d 847 (Nos. 58,437 and 58,438, 1977), a majority of this Court has today overruled Guidry and the numerous decisions that have followed it. I have recorded my dissent.
In this case, Olinkraft attacks the constitutionality of our present "quick-taking" statute, asserting that the statute offends federal and state due process guarantees.[1] It buttresses the claim with the arguments that the landowner is not afforded an opportunity to be heard prior to the expropriation, and that the absence of an express 1974 constitutional authorization for "quick-taking" prohibits use of this expropriation procedure.
In State, Through the Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958), this Court held our former "quick-taking" statute constitutional. As the amendments to the "quick-taking" statute still provide for expropriation prior to a hearing, Macaluso controls. Therein we stated:
"Respondents' final contention is that Act 107 of 1954 offends federal due process requirements. This argument has little merit. As the United States Supreme Court stated in Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135, in upholding a State enactment similarity [sic, similar] to the present Louisiana statute permitting an ex parte taking with immediate possession for highway purposes without any hearing whatsoever provided as to the necessity of the taking although with an eventual full judicial hearing (if desired) upon the property owner's claim for compensation, 251 U.S. 58-59, 62, 40 S.Ct. 63:
"Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the state may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment.
"`But it is essential to due process that the mode of determining the compensation be such as to afford the owner an opportunity to be heard. * * *`" [Footnote and citations omitted.]
Inasmuch as the "quick-taking" statute provides for the landowner to be heard on the issue of compensation, the present statute is consistent with federal due process standards.
For the same reasons stated above, I believe this expropriation procedure consistent with state due process requirements. See State, Through the Department of Highways v. Jackson Brewing Company, La.App., 146 So.2d 504 (1962); State, Through the Department of Highways v. Higgins, La.App., 135 So.2d 306 (1961).
Olinkraft next contends that, under the 1974 state constitution, the Legislature no longer has authority to enact a "quick-taking" expropriation statute. While the 1921 Louisiana Constitution explicitly provided for the "quick-taking" procedure[2], Article 1, § 4 of the 1974 Constitution contains the following broad language:
"Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.

"Property shall not be taken or damaged by the state or its political subdivisions *871 except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken." [Emphasis supplied.]
The language is sufficiently broad to authorize the Legislature to adopt a "quick-taking" statute. The Due Process Clause of the 1921 Constitution provided that private property "shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." La. Const. Art. 1, § 2 (1921) [Emphasis supplied.] See State, Through the Sabine River Authority v. Phares, 245 La. 534, 159 So.2d 144 (1963). In an obvious reference to the "quick-taking" procedure, the 1974 provision reduces the limitation to "with just compensation paid to the owner or into court for his benefit." See State of Louisiana, Constitutional Convention of 1973. Verbatim Transcripts. 39 volumes [1973-1974]. (Hereinafter cited as Proceedings.) XV Proceedings (46th day, September 13) 54 and 61; XII Proceedings (39th day, August 30) 8; Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1.
Moreover, assuming arguendo that Article 1, Section 4 is interpreted to contain no specific authorization to the Legislature, the convention's General Guideline No. 1 of the Manual on Style and Drafting correctly formulates the controlling rule as follows:
"The general rule of state constitutional interpretation is: The provisions of a state constitution are limitations on the power of the people exercised through the legislature; what is not prohibited by the constitution is permitted. Therefore, the legislature is empowered to enact any law not prohibited by the constitution; it is unnecessary to specify, for example: The legislature has the power to enact laws providing for punishment for crime. In the absence of constitutional prohibition, the legislature has that power."
1 Official Journal of the Proceedings of the Constitutional Convention of 1973, 769 (1973).
In a perceptive commentary on the 1974 Constitution, Professor Hargrave noted:
"Though Louisiana courts have accepted and applied the principle that a state legislature possesses plenary power to do anything not prohibited by the constitution even absent a grant of power, the fact that the 1921 constitution contained so many grants of power, often grants coupled with explicit or implicit limitations, resulted in the general principle being applied less often than it might otherwise have been. The 1974 constitution, deliberately short, intentionally concise, and knowingly avoiding grants of power, will require application of the principle more often. The convention used the principle as its basic starting point, and a narrow construction of legislative power under the document would thwart its purpose of giving more flexibility to the legislature." [Footnote omitted.]
The Work of the Louisiana Appellate Courts for the 1974-1975 Term  Louisiana Constitutional Law, 36 La.L.Rev. 533.
In Hainkel v. Henry, La., 313 So.2d 577 (1975), we stated:
"Thus, in the absence of a particular constitutional provision that limits the power of the legislature to act in the respects assailed, a legislative action cannot be invalidated as contrary to the state's constitution."
Therefore, the constitutional attack upon LSA-R.S. 48:441 et seq. is without merit.
*872 In Ulinkratt's final contentions it complains of the extent of the property right taken by the State. It alleges that the expropriation of its property in full ownership, rather than a servitude of right of way, is not a taking for a public purpose; and alternatively, that the Department of Highways abused its discretion by taking its land in full ownership.
Apparently, the majority assumes that since it has overruled State, Through the Department of Highways v. Guidry, supra, the necessity of the taking is a proper issue for judicial determination in the present case. Such an assumption is unwarranted. As I noted in my dissent in State, Through the Department of Highways v. Jeanerette Lumber and Shingle Company, Ltd., supra, the overruling was based upon the words "highway purposes" found in Section 19.1 of Article 6 of the Louisiana Constitution of 1921. That provision is no longer extant. Under the 1974 Constitution, as I have already noted, the Legislature has full authority to enact a "quick-taking" statute. The words "highway purposes" do not appear in Article 1, § 4 of the 1974 Constitution.
In Act No. 30 of the Extraordinary Session of 1974, the Legislature amended and re-enacted the "quick-taking" statute, effective January 1,1975. The major change made by these amendments was the addition of several statutes (LSA-R.S. 48:451.1-451.23) detailing the trial procedure for suits by landowners questioning the State's expropriation. However, the amendments retained the substance of former LSA-R.S. 48:447 and 460. These sections, as amended, read in pertinent part:
LSA-R.S. 48:447
"Any defendant desiring to contest the validity of the taking on the ground that the property was not expropriated for a public purpose may file a motion to dismiss the suit within ten days after the date on which the notice was served on him."
LSA-R.S. 48:460
"The plaintiff shall not be divested by court order of any title acquired under these provisions except where such court finds that the property was not taken for a public purpose." (Emphasis supplied.)
These sections limit divestiture to the instance in which the property was not taken for a public purpose. Therefore, courts are precluded from reviewing the necessity of the taking.
I conclude that the present statute bars judicial inquiry into the landowner's complaints concerning the extent of the property interest expropriated and the necessity for such expropriation.
For the reasons assigned, I respectfully dissent.

ON REHEARING
DENNIS, Justice.
We granted a rehearing in this case to reconsider our original decision relating to judicial review of the necessity and extent of the taking in ex parte highway expropriations under the Louisiana Constitution of 1974 and La.R.S. 48:441 et seq. as reenacted, Act 30 of Ex.Sess.1974.
The Department of Highways, seeking to take additional property in full ownership along both sides of its servitude over defendant's land in Union Parish for the purposes of widening the roadway and constructing a highway bridge, proceeded under the newly reenacted quick-taking statute, Act 30 of Ex.Sess.1974 (La.R.S. 48:441 et seq.), and obtained an expropriation order from the district court. Defendant subsequently appeared and filed a motion to vacate or modify the order contending that the quick-taking statute is unconstitutional, that the expropriation was not for a public purpose, and that the Department abused its discretion in expropriating the full ownership of the property, rather than a servitude. The district court refused to vacate or modify the expropriation order and the court of appeal affirmed its judgment. Thereafter, writs were granted here and, upon original hearing, we reversed and modified the expropriation order so as to grant the Department a servitude over the property instead of full ownership.
*873 As to the first issue raised by the defendant, we need merely reaffirm our unanimous decision upon initial hearing. Louisiana's present quick-taking highway expropriation statute, La.R.S. 48:441 et seq. (Act 30 of Ex.Sess.1974) is inoffensive to the Louisiana Constitution of 1974 and the United States Constitution for the reasons ably stated by Justice Summers in his original majority opinion, by Chief Justice Sanders in his dissenting opinion, and by Judge Price in his court of appeal opinion, 333 So.2d 721 (La.App. 2d Cir. 1976).
Writs were granted in this case to consider the applicability of State, Through the Department of Highways v. Guidry, 240 La. 516, 124 So.2d 531 (1960) to the present quick-taking statute. 338 So.2d 292 (La. 1976). Guidry held that our former quick-taking statute precluded judicial review of the necessity for such a taking. In State, Through the Department of Highways v. Jeanerette Lumber & Shingle Company, Ltd., 350 So.2d 847, Nos. 58,437 and 58,438 (La.1977), we re-affirmed but clarified our holding in Guidry, stating:
"In summary, therefore, when the Highway Department expropriates property pursuant to Article VI, § 19.1, La. Const. of 1921, and Act 107 of 1954, there are three questions which the courts may determine: (1) whether the property was taken for a highway purpose; (2) whether the expropriating agency acted arbitrarily, capriciously or in bad faith in determining the necessity of the taking; and (3) the adequacy of the compensation. * * *" 350 So.2d 847, Nos. 58,437 and 58,438 (La.1977).
The present quick-taking statute was enacted by the Legislature after the adoption of the Louisiana Constitution of 1974. The former quick-taking act which we interpreted in the Jeanerette case was enacted pursuant to a grant of authority set forth in the Louisiana Constitution of 1921. However, the two quick-taking statutes are identical in every respect here pertinent, and we find no change in the provisions of the present constitution which requires that we draw a different inference from the same statutory language.
The Louisiana Constitution of 1921, Article VI, § 19.1 authorized ex parte expropriations for "highway purposes" only, whereas the Louisiana Constitution of 1974, Article I, § 4 merely requires that expropriations by the State or its political subdivisions be for "public purposes." As a result of the new terminology, the Legislature may authorize quick-takings for any public purpose and need no longer limit such legislation to takings for highway purposes. Otherwise, however, there appears to have been no intention to change the legal standards for expropriations by public agencies. See, State of Louisiana, Constitutional Convention of 1973, Verbatim Transcripts, Vol. XII, pp. 6-54, 56-120 (39th day, August 30, 1973); Vol. XIV, pp. 34-68 (46th day, Sept. 13, 1973); Hargrave, Declaration of Rights, 35 La.L.Rev. 1, 16 (1974).
Because the Legislature did not alter the provisions of the quick-taking statute pertinent to this case, and because the present constitution does not require a different interpretation of those provisions, the principles inferred from the same statutory language in the Jeanerette case are applicable here. Consequently, when the Department of Highways or its successor expropriates property pursuant to Article I, § 4, La.Const. of 1974, and Act 30, Ex.Sess. 1974, there are three questions which the courts may determine: (1) whether the property was taken for a highway purpose; (2) whether the expropriating agency acted arbitrarily, capriciously or in bad faith in determining the necessity of the taking, and (3) the adequacy of the compensation.
Considering the remaining contentions of the defendant in light of these principles we conclude, first, that the property clearly was taken for a highway purpose because it was expropriated for the construction of a highway bridge and the widening of the approaching roadway. Defendant argues that the taking in full ownership could not be for a highway or even a public purpose because only a servitude was necessary for the construction project.
*874 This argument, however, does not properly relate to the purpose of the taking but is an attempt to raise the question of its necessity, an issue which courts may not consider except for the purpose of determining whether the expropriating agency acted arbitrarily, capriciously or in bad faith in deciding that the taking was necessary. State, Through the Department of Highways v. Jeanerette Lumber & Shingle Co., Ltd., 350 So.2d 847, Nos. 58,437 and 58,438 (La.1977); State, Through the Department of Highways v. Guidry, 240 La. 516, 124 So.2d 531 (1960).
In an effort to discharge its heavy burden of proving that the Department acted arbitrarily in determining that it was necessary to expropriate the property in full ownership, the defendant introduced evidence that the Board of Highways' resolution authorizing the taking declared that the property could be expropriated in servitude or in fee, that before the taking the state owned only a servitude along the roadway at the site of the expropriation, that it would be possible to accomplish the construction of the contemplated physical improvements without acquisition of full ownership, that the policy of taking a fee instead of a servitude in right of way expropriations had been a uniform policy of the Department for several years, and that after the issuance of the expropriation order the Department's attorney proposed to defendant through its counsel that the state would dismiss the expropriation proceedings if defendant would donate to it a servitude and refund the deposit.
The Department contended that full ownership rather than a servitude was necessary to the project. Its evidence indicated that the policy of acquiring full ownership had been adopted to give the Department complete control of the use of land within its rights of way corridors. This policy apparently evolved because of the difficulty the Department encountered over the years in locating or relocating public utility improvements within the right of way when it did not own the fee. The evidence indicated it is often necessary to move pipes and cables out of the way of roadway construction and frequently desirable to bring water, electrical and other utility services on to highway improvements such as bridges and roadside parks. According to one witness, some utility improvements, such as underground lines, are often discovered unexpectedly where public records give no indication of their existence. The Department's ancillary policy of attempting to settle an expropriation suit by offering to accept a donation of a servitude was based on the experience of its employees that sufficient funds would normally be saved through a free acquisition to defray the expenses of locating or relocating public utilities within the highway right of way. The record further suggests that the Board of Highways' resolutions routinely authorize the acquisition of either a fee or a servitude in order to facilitate donations and settlements.
Defendant asserts that the Department's determination of necessity was arbitrary or capricious because it was based on a fixed policy used to govern every expropriation and that the policy is not reasonable because under La.R.S. 48:381, the director of the Highway Department is authorized to issue permits for the use and occupancy of the rights of way of state highways for installations such as underground and overhead cables, conduits and pipes. The statute provides that such installation must be made upon the condition that the owner shall, at no cost to the Department, remove or relocate the facility whenever necessary for highway purposes. Consequently, defendant argues, the Department does not need to own the fee in order to effect cost free installation, removal or relocation of such facilities. The Department points out, however, that the jurisprudence holds that this statute does not give the Department, when it owns only a servitude for highway purposes, the authority to grant permission to another party for a different use. See, Koch v. Louisiana Power & Light Company, 298 So.2d 124 (La.App. 1st Cir. 1974), writ denied 302 So.2d 17 (La., 1974); Louisiana Power & Light Company v. Dileo, 79 So.2d 150 (La.App. 1st Cir. 1955). Moreover, the *875 Department's argument suggests, even if defendant has correctly interpreted the statute, that La.R.S. 48:381 is applicable only to installations made pursuant to a permit for use and occupancy issued by the director. Accordingly, the statute provides no authority for removal or relocation of facilities placed on land prior to the Department's acquisition of a servitude across it, and no inducement to installation of new facilities on a right of way by a utility owner who is unwilling to accept the conditions attached to a permit. Without attempting to definitively decide the abstract legal questions raised, we conclude there is sufficient basis in law and practicality to justify the Department's concerns about taking servitudes for highway rights of way and to provide a rational basis for its policy and decision to expropriate the property in full ownership. Hence the expropriating body did not act arbitrarily, capriciously, or in bad faith and, therefore, we may not substitute our judgment for the Department's on this question.
For the foregoing reasons, the judgment of the court of appeal is affirmed at relator's cost.
SANDERS, C. J., concurs.
SUMMERS, J., dissents and adheres to the Court's original opinion.
DIXON, J., dissents.
NOTES
[1] La.Const. art. VI, § 19.1.
[1] U.S.Const. Amends. V and XIV; La.Const. Art. 1, § 2 (1974).
[2] La.Const. Art. 6, § 19.1 (1921).