350 So.2d 847 (1977)
STATE of Louisiana, Through the DEPT. OF HIGHWAYS
v.
JEANERETTE LUMBER & SHINGLE CO., LTD.
Nos. 58437, 58438.
Supreme Court of Louisiana.
May 16, 1977.
On Rehearing September 19, 1977.
*850 Walter J. Suthon, III, George Ann Hayne, Monroe & Lemann, New Orleans, for defendant-applicant.
William W. Irwin, Jr., Jerry F. Davis, Alva J. Jones, Johnie E. Branch, Jr., Baton Rouge, for plaintiff-respondent.
SUMMERS, Justice.
On November 19, 1969 the State of Louisiana, through the Department of Highways filed two suits against Jeanerette Lumber & Shingle Co., Ltd. to expropriate permanent rights of way across two separate tracts of land belonging to Jeanerette situated in Iberville Parish. One of the properties is owned entirely by Jeanerette, and it owns a fractional five-eighths interest in the other. The Department alleged the right of way was required in connection with the construction of a controlled-access twin trestle-type concrete bridge as a portion of State Route La. I-10 in Iberville Parish. The segment of the highway in question to begin at the east bank of Whiskey Bay Pilot Channel and extend easterly across the Atchafalaya Floodway to Ramah, a distance of 7.485 miles.
Proceedings were instituted under the authority of Section 19.1 of Article VI of the Constitution of 1921 and Sections 441-460 of Title 48 of the Revised Statutes, the constitutional and statutory enactments in effect at the time of the taking and which are controlling in this case. Under certain conditions these constitutional and statutory enactments authorize the taking of property for highway purposes by orders rendered ex parte in expropriation suits. It is called the "quick taking" procedure.
A permanent servitude of right of way 400 feet wide across both tracts running in a north-south direction is sought from Jeanerette by the Department. The right of way to be used for the excavation of an *851 access canal which would provide flotation for heavy equipment and material used in the construction of the Whiskey Bay Pilot Channel-Ramah segment of the I-10 highway. Beginning at the Upper Grand River on the south, a branch of the Atchafalaya River, the access canal was to be excavated in a north-south direction traversing Jeanerette's land and other properties and terminating 10.2 miles to the north where it would connect with a construction canal running east and west along the center of the Whiskey Bay Pilot Channel-Ramah segment of the I-10 highway. While it is not clear from the Department's petition that the servitude of right of way for the north-south canal was to be a controlled-access facility, the contention is made that such was the intent of the Department. No part of the property sought to be expropriated from Jeanerette lies within the I-10 highway right of way.
On the basis of the Department's petition the trial judge signed an ex parte order on November 19, 1969 decreeing that the permanent servitude of right of way was expropriated and taken for highway purposes. Thus, upon the deposit of the amount of the estimated value of the property in the registry of court a permanent servitude of right of way became vested in the Department.
Within the time limit set by Section 447 of Title 48 of the Revised Statutes to contest the validity of the taking on the ground that the property was not expropriated for a public purpose, Jeanerette filed a motion to dismiss in which it sought to vacate and set aside the order of expropriation alleging that 1) the taking was for a private, not public, use to provide a contractor with private access to a public project; 2) the taking was beyond the powers of the Department because Jeanerette's property was outside the proposed highway right of way, will not be used for highway purposes, and the Department did not have the power to acquire property outside the highway right of way other than for borrow pits and drainage; 3) the Department's determination that the taking was necessary reflects bad faith and abuse of discretion because other existing waterways are suitable for the stated purpose and the Department has made no effort to use those alternatives; 4) the taking is null and void because the location of the servitude cannot be determined from the Department's description or map; 5) the type of rights to be exercised on the servitude is not stated; 6) the Board of Highways resolution does not state that the servitude sought is necessary or useful for the highway project; 7) the width of the servitude is not properly fixed in the engineer's certificate; and 8) the certificate as to location and design does not relate to the servitude in question.
Alternatively the motion to dismiss sought a modification of the expropriation order 1) to confine the Department's rights to a temporary servitude for construction purposes and one not open to the general public; 2) to restrict the servitude area to the width of the canal proper and a limited spoil area with defendant's right of free access to the canal recognized; and 3) to eliminate the controlled-access features of the taking.
These Jeanerette contentions are alleged to be based upon the propositions that the servitude is sought for a private, not a public use; the Department is in bad faith in declaring this permanent servitude to be necessary; and in seeking this servitude the Department is exceeding its constitutional and statutory authority to acquire property for highway purposes.
Thereafter, while the motion to dismiss was pending, the Department excavated a 100-foot wide access canal within the 400-foot wide servitude connecting with the construction canal and it completed the construction of the I-10 from Baton Rouge to Lafayette across the Atchafalaya Floodway. Heavy equipment and material were floated on barges through the Atchafalaya River, the Upper Grand River, the access canal and into the construction canal. This latter canal, lying at the center of the highway right of way, served as a flotation base for barges bearing heavy equipment used in the construction and for unloading *852 materials and prefabricated concrete sections for incorporation into the twin trestle-type concrete bridge.
When Jeanerette's motion to dismiss was finally set for trial and tried on January 14, 1975, the trial judge modified the order of expropriation. He decreed that the permanent servitude of right of way was to be for the exclusive use of the Department in constructing, maintaining and repairing the Whiskey Bay Pilot Channel-Ramah segment of the I-10 highway; the access canal constructed on that servitude of right of way was not a general public way available for use by the public; the access canal was not to be considered as a controlled-access facility, Jeanerette to have full access to said access canal subject to the Department's limited rights; and the portion of the 400 foot width of the servitude of right of way not within the access canal to be used by the Department only for maintenance, repair or redredging of said canal.
Writs for review of the judgment of the trial court were applied for by the Department but the First Circuit denied the application, noting that the Department had a remedy by appeal. An appeal was then taken by the Department. Jeanerette answered the appeal seeking full restoration of its title, or, alternatively, restriction of the Department's rights to a temporary servitude; or, further in the alternative, limiting the servitude to the access canal itself. The First Circuit reversed on the authority of this Court's decision in State v. Guidry, 240 La. 516, 124 So.2d 531 (1960), holding that it was error for the trial judge to reduce the permanent servitude of right of way to a limited servitude for the construction, maintenance and repair, because the extent of the taking by the State is not subject to judicial review. In the Court's opinion the right of the public to use the access canal should be the subject of a separate suit. La.App., 335 So.2d 453, 456. One judge of the three-judge panel dissented from the refusal to grant a rehearing. He was of the opinion that the Department's attempt to use or permit use of the servitude of right of way for other than construction and maintenance was not a public use for which that agency of the State could validly acquire any rights. He asserted he would affirm the judgment of the trial court. La.App., 335 So.2d 549.
Jeanerette then applied to this Court for writs of review which were granted. La., 338 So.2d 291.
The record discloses that negotiations by the Department with Jeanerette were undertaken before the suit for expropriation was filed. In that connection Jeanerette offered to grant a 200-foot wide servitude for the construction of the access channel, one condition being that the canal would remain at all times private and at no time available for public use, except for the construction and maintenance of the highway. The proposal, however, was rejected, the Department stating that it wished "to open this canal to public use." It also insisted upon a permanent right of way 400 feet wide.
According to the testimony of the bridge design engineer of the Department, he was involved in the planning and design of the I-10 highway across the Atchafalaya Floodway. He testified that the Louisiana Wildlife and Fisheries Commission was consulted and they fixed the alignment of the proposed access canal within a corridor from Upper Grand River North to the I-10 right of way. It was also specified by the Commission that a low water dam or weir be installed at the south end of the access canal after construction of the highway to maintain a water level conducive to fishing and hunting in the area surrounding the 10.2 mile long access canal.
After completion of the highway construction, the Commission recommended establishment of boat launching ramps at either end of the construction canal to provide sportsmen and fishermen a convenience to navigate their boats through the construction canal, into the access canal and then into the adjoining fishing grounds. To make this route feasible, no dam or weir was installed at the north end of the access canal at its juncture with the construction canal. In compliance with the Commission *853 recommendations, the Department established and maintains boat launching ramps, and, at the time of the hearing in January 1975, boatmen freely used the access canal for fishing and recreation, gaining entry by the use of the boat ramps and construction canal. The public was thereby encouraged by the Commission with the assistance of the Department to use this facility.
Because a low water weir or dam was constructed at the southern end of the access canal in keeping with the requirements of the Commission, it would be necessary to remove the weir each time the Department found it necessary to navigate the canal with barges to repair or maintain the highway bridge. Obviously, because of this weir or dam, it is improbable that the use of the canal for regular maintenance is either contemplated or considered necessary. Only major damage would warrant removal of the weir. As a matter of fact, the Department's position is made clear by its contention that the access canal was a costly undertaking with public funds and the canal should be made available to the public at large for recreational purposes.
From these facts it is evident that the access canal is devoted to public recreation purposes at this time. But the Department contends that this use is only a secondary use, and the primary purpose of the canal is for future maintenance and repair. Nevertheless, the Department resists the efforts of Jeanerette to dam the northern end of the access canal to prevent its public use for recreational purposes. This despite the testimony of the Department's own witness that a dam would not interfere with the Department's intended future use of the access canal for maintenance and repair. Such a dam or weir, the witness admitted, would be comparable to the one at the southern terminus of the access canal which could be removed if the canal were needed for repair or maintenance.
To support its position that a permanent servitude of right of way is required for maintenance and repair of the highway segment involved here, the Department argues that repairs would be necessary in the event of damage to the highway trestles or bridge by an atomic attack in time of war. When the Department's witness was questioned on this point by the trial judge, he readily conceded that an atomic attack was not a sound basis for its position that a permanent servitude was required, the inference being that an atomic attack would result in total destruction of the highway trestle, requiring a rebuilding from scratch of the entire facility.
In a further effort to support its position that repairs involving the use of the access canal would be required, the Department's witness referred to incidents involving damage to the causeway across Lake Pontchartrain. When asked if he was referring to sections of the causeway damaged by tugboats and barges running into it, he replied that the damage contemplated was that sustained by like structures when trucks spilled the contents of highly volatile substances such as gasoline. When fire occurred as a result, and damaged the structures, replacement of the affected span was required. The witness conceded that there was no danger of damage to this I-10 bridge by tugboats or barges similar to the damage to the Pontchartrain Causeway since no traffic of tugs or barges could reach this segment of the I-10. Thus, the only foreseeable damage the Department could substantiate in any respect would be that caused by fire. This contention, that a permanent servitude was required to provide access to repair fire damage, loses credibility in the light of testimony that the contractor was given an alternate set of plans by the Department for access to the construction canal in the bid specifications. This alternate choice involved a much shorter canal from the Whiskey Bay Pilot Channel on the west to the construction canal. A condition of this alternate access, however, was that it was to be permanently dammed when the construction was completed. Undoubtedly the Department was aware of the fact that if the contractor had selected the alternate route there would be no permanent water access for the passage of construction barges for maintenance or repair.
*854 Since excavation of the access canal for construction of the I-10 highway was an accomplished fact at the time of the trial of Jeanerette's motion to dismiss, the servitude previously vested in the Department by the order of expropriation had not been modified or set aside. Jeanerette, by delaying the trial of the motion to dismiss, could not impair the rights conferred upon the Department by the expropriation order. The Department was therefore entitled to act upon that authority.
Appropriately, therefore, Jeanerette now makes no issue of the vagueness of the description set forth in the Department's petition, the complaint about the Resolution of the Board of Highways, the Chief Engineers' certificate or the certificate of the design engineer. While contending that its title should be declared unencumbered, Jeanerette does insist that it should be compensated for the period during which the property was in the Department's possession and the damages incurred thereby. La.Rev.Stat. 48:460. Whether that servitude should be considered permanent and limited or a temporary one which is no longer in effect since the completion of the highway construction are the remaining viable issues presented by the motion to dismiss.
A general requirement for all expropriations is set forth in Section 2 of the Article I of the Constitution: "Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for a public purpose and after just and adequate compensation is paid." (emphasis added). See also La.Civil Code arts. 497, 2626-41. However, in any consideration of the rights of the Department to expropriate under the quick taking procedure employed in this case, the question is always whether the expropriation is for highway purposes. This is an expressed condition in the authorization conferred by Section 19.1 of Article VI of the Constitution of 1921: "The Legislature shall have authority to authorize the taking of property for highway purposes by orders rendered ex parte in expropriation suits prior to judgment therein . . . ." (emphasis added.). By Section 19.1 of Article VI the general public purpose of Section 2 of Article 1 of the Constitution is narrowed.
The condition found in Section 19.1 is again made explicit by the Legislature in Section 444 of Title 48 of the Revised Statutes, an enactment requiring that the petition for expropriation by a declaration of taking "shall conclude with a prayer that the property be declared taken for highway purposes." This same section also mandates that the order of court shall declare "that the property described in the petition has been taken for highway purposes." Thus, when the language of Section 460 of Title 48 provides that the Department "shall not be divested by court order of any title acquired under these provisions except where the court finds that the property was not taken for a public use," the public use contemplated is for the highway purposes authorized by the Constitution and referred to in the quoted language from Section 444. Both of these sections were enacted at the same time by Act 107 of 1954 and the intent to restrict the quick taking procedure to expropriation for highway purposes is evident. If it were the legislative intent to broaden the quick taking procedure to public use generally instead, such an intent would run counter to Section 19.1 of Title VI of the Constitution which only authorizes the Legislature to permit this quick taking procedure for highway purposes. When this authority is delegated by the constitution other authority is withheld.
The Department's authority under this quick taking procedure is therefore limited to expropriation for highway purposes. No authority is granted to employ this procedure for the broader, more comprehensive general "public purposes" considered prerequisite to any expropriation by Section 2 of Article I of the Constitution of 1921.
It is therefore necessary to determine whether, since completion of the highway construction, and in the future, the servitude of right of way for the access canal will serve a highway purpose. It is Jeanerette's principal contention that no permanent *855 servitude should be recognized in favor of the Department for any part of the servitude area described in the petition. As the contention is understood, since the construction is completed a permanent servitude will not be required by the Department for highway purposes.
To forestall any judicial review of the Department's determination that a permanent servitude is needed for a highway purpose, the Department relies upon this Court's decision in State v. Guidry, 240 La. 516, 124 So.2d 531 (1960). It was partially to reconsider the decision in Guidry that certiorari was granted in the case at bar. In Guidry the Department, proceeding under the constitutional and statutory authority invoked in this case, filed suit to expropriate a small lot of land owned by the defendant Guidry for use as a ferry landing. The issue was joined on defendant's allegation in his motion to dismiss that the Department needed only a servitude over his property and the taking of the land in full ownership would serve no public purpose.
Relying upon the language in Section 460 of Title 48 of the Revised Statutes, the Guidry court held that when the Department expropriates property under this quick taking procedure courts may only determine the adequacy of the compensation and whether the property was taken for a public purpose. It was within the Department's discretion, therefore, to determine whether there was a necessity to expropriate full ownership or merely a servitude affecting the land.
As our discussion of these enactments indicates, the Guidry Court was in error in relying upon the broad reference to public purpose in Section 460 to decide that courts could not review the determinations of the Department on the extent of the taking. The true intendment of that section was to refer to public use in the sense that it would be for highway purposes, a conclusion gained by referring to Section 444 of Title 48 of the Revised Statutes and Section 19.1 of Article VI of the 1921 Constitution. The distinction, of course, is significant. Public use generally has a broad and comprehensive meaning embracing use by a multitude of governmental departments, agencies and subdivisions, some totally unconnected with highway purposes. Highway purposes, on the other hand, are more limited and are unconnected with the multitude of other public uses. A highway purpose must reasonably and realistically serve to provide for the construction, maintenance and repair of highways and bridges, and the expropriating authority should be in a position to justify and support with cogent reasons the taking for that purpose. The taking must be in good faith. Greater Baton Rouge Port Comm. v. Watson, 224 La. 136, 68 So.2d 901 (1953). Anything less would constitute an abuse of the discretion allowed by law. New Orleans Pac. Ry. Co. v. Gay, 32 La.Ann. 471 (1880). Merely to conclude that the taking is for highway purposes is not sufficient. Such things as rights of way for highway construction, for highway drains and for borrow pits to build road beds are typical examples of takings for highway purposes.
And the intention of the constitutional and statutory authorization limiting the Department's quick taking rights for highway purposes is a logical and reasonable limitation to the Department's authority to expropriate. Because its business is building, maintaining and repairing highways and bridges, there is no reason why the Department should expropriate property for other purposes.
In construing constitutions or statutes granting the power of expropriation, even when the power has been expressly granted, the grant, itself, and the extent thereof will be construed strictly against the grantee. The latter will not be allowed to take the lands of another unless such right comes clearly and unmistakably within the limits of the authority granted. Whatever is not plainly given is to be construed as withheld. Nichols', The Law of Eminent Domain, Vol. 1, Sec. 3.213(1). Expropriation "is special and exceptional in character, in derogation of common right, and must be strictly construed." Orleans *856 Kenner Electric Ry.Co. v. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93 (1915).
No language in the Constitution or in the statutes has been found, and none is pointed out, which prohibits judicial review of a Department determination that property should be taken for highway purpose. To the contrary, it is stated in Section 447 that any defendant "desiring to contest the validity of the taking" may file a motion to dismiss the suit within ten days. This Section further provides that failure to file the motion within the time provided constitutes a waiver of "all defenses to the suit except claims for compensation." It is implicit in this Section that a contest of the validity of the taking is not only contemplated but permitted by law. Other defenses except claims for compensation are explicit in the Section. A concomitant right to this right of review is the right of the defendant not only to have the taking declared invalid but to have the order of expropriation modified in keeping with the authorization in Section 460 permitting the court to "enter such judgment as is necessary to compensate the defendant for the period during which the property was in the possession of the plaintiff."
To deny judicial review of the Department's disregard of these important constitutional and statutory limitations upon its authority would be contrary to a fundamental tenet of Louisiana justice that "[a]ll courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay." La.Const. art. I, § 6 (1921). A need for judicial review of the Department's determinations is of special significance for it exercises the power of expropriation, one of the attributes of sovereignty most fraught with the possibility of abuse and injustice.
On these principles the holding of the Guidry case cannot be approved. A proper regard for the constitutional footing of the quick taking procedure was not accorded to Guidry's contentions; nor was the Section 444 reference to highway purposes considered or the right to review contemplated by Sections 447 and 460. The assumption in Guidry to the effect that the Department, with the responsibility of expending huge sums of money, will employ competent engineers to certify that the property proposed to be taken is for public use is based upon the faulty premise that the broad and comprehensive meaning of public use and not the narrower more limited meaning of highway purposes is the standard. This assumption stands at the very heart of the rule established in the Guidry case. Without reflecting upon the competence of the Department's engineers, an assumption is never a proper basis for deciding cases. These errors should not be permitted to influence this decision or future litigation based upon the same constitutional and statutory authority. In that respect Guidry is overruled.
In considering the need for a permanent right of way a return to the facts established by the record and heretofore recited leads the Court to the conclusion that the State's primary interest in securing a permanent right of way was to provide access for the public to use the property of private individuals and companies as an access to the Atchafalaya Swamp for recreational purposes. This is obviously not a highway purpose and the Department is not authorized to take private property for that purpose. See Osceola City v. Triple E Development Co., 90 So.2d 600 (Fla.1956); Peavy-Wilson Lumber Co. v. Brevard County, 159 Fla. 311, 31 So.2d 483 (1947); Albright v. Sussex County Lake & Park Commission, 71 N.J.L. 303, 57 A. 398 (1904).
The notion of an atomic attack or collision by barges as the cause of future damage to the bridge has been dispelled. It is evident from this record that the sole basis for requiring a permanent servitude is the remote eventuality that a truck or other vehicle will spill highly volatile and inflammable liquids on the concrete bridge and cause a fire. On this single speculative showing the law will not sanction virtually *857 divesting the landowner of the complete enjoyment of the property taken and, at the same time, provide access for the general public to trespass upon the landowner's surrounding property for recreational purposes. It is only the extraordinary circumstances and logistics involved in traversing the Atchafalaya Swamp which warrants a taking of this 10.2 mile canal right of way.
Making the 100-foot wide canal available to the Department on future occasions when maintenance or repairs are required, together with the right to dredge the canal periodically to maintain its navigable character, are the only rights which the Department requires or can claim on this record. Therefore, all property outside the canal property is returned to the possession and full enjoyment of Jeanerette, except for the Department's right to dump dredge spoil along the banks of the canal when its navigability is being maintained by dredging. Further, Jeanerette shall have full access to the canal subject to the foregoing rights of the Department. Jeanerette shall have the right to construct and maintain not more than two weirs or dams in the access canal on its property to obstruct boat passage. These weirs or dams shall be of similar construction and composition as the dam now established by the Department at the south end of the access canal so that their removal and replacement by the Department when passage is required will not create an undue burden.
Jeanerette has made no showing of the amount necessary to compensate it for the period during which the Department exercised the rights incident to a permanent servitude right of way as opposed to the limited servitude and rights herein recognized. Without record evidence to support an additional award of compensation and in the absence of a showing that it is entitled to a return, the amount deposited by the Department in the registry of court is deemed proper.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and judgment is rendered herein in favor of Jeanerette and against the Department as set forth in this opinion.
SANDERS, C. J., dissents with written reasons.
TATE, J., dissents and assigns reasons.
CALOGERO, J., dissents for reasons assigned by SANDERS, C. J.
SANDERS, Chief Justice (dissenting).
The Court granted writs to reconsider our holding in State, Through the Department of Highways v. Guidry, 240 La. 516, 124 So.2d 531 (1960). In Guidry, we held that Louisiana's "quick-taking" statute, former LSA-R.S. 48:441 et seq., precludes judicial review of the necessity of an expropriation.
The 1921 Constitution provided that private property may only be expropriated for a public purpose and after just and adequate compensation was paid. La.Const. Art. 1, § 2 (1921). Former LSA-R.S. 48:441 et seq. authorized the State, through the Department of Highways, to expropriate property or property rights for highway purposes by ex parte order. This "quick-taking" statute provided that upon the department's filing a petition praying that certain property be expropriated for highway purposes, the court order the deposit of an estimated amount for just compensation into the court registry. Former LSA-R.S. 48:444. "Upon such deposit, title to the property and property rights specified in the petition shall vest in the department. . . ." Former LSA-R.S. 48:445. "Any defendant desiring to contest the validity of the taking on the ground that the property was not expropriated for a public use may file a motion to dismiss the suit within ten days from the date the notice [of the expropriation] was served on him." Former LSA-R.S. 48:447. (Emphasis supplied.) In addition, any landowner could apply for a trial to have a judicial determination of the market value of his land expropriated. Former LSA-R.S. 48:450 and 451. However, the Department of Highways "shall not be divested by court order of any title acquired under these provisions except where such court finds that the *858 property was not taken for a public use. Former LSA-R.S. 48:460. (Emphasis supplied.)
In Guidry we stated:
"The primary issue for our consideration is whether the question of the necessity for the taking of property expropriated by the Highway Department under Article VI, Section 19.1, of the Constitution and Act 107 of 1954 (LSA-R.S. 48:441-48:460) is subject to judicial review.
"Prior to the enactment of Act 107 of 1954 the owner of expropriated property was entitled to contest the question of necessity of the taking before the courts, and may still do so when the property has been expropriated under the general expropriation laws of the State. [Citations omitted.] With the adoption of constitutional Article VI, Section 19.1 and Act 107 of 1954, however, when the Highway Department expropriates property under these provisions, there are only two questions which the courts may determine: (1) the adequacy of the compensation [former LSA-R.S. 48:445, 450, and 451], and (2) whether the property was taken for a public purpose [former LSA-R.S. 48:447 and 460]. [Footnotes omitted.] * * * Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such a manner as the State may designate. They are legislative questions no matter who may be charged with their decision. Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186; see also Nichols on Eminent Domain, 3rd Ed., Vol. I, Sees. 4.11, 4.11(1) and 4.11(3). In Louisiana, the Legislature has delegated to the Highway Department the power to determine the necessity for expropriating property for highway purposes and the owner of land expropriated has no constitutional right to have the department's decision as to necessity thereof reviewed in judicial proceedings. * * *
"* * *
"Highways, super-highways, multi-lane highways, expressways with their clover leaves, underpasses, overpasses, interchanges, approaches, et cetera, have become such an integral part of our life that in order properly to lay out, construct, maintain, operate and police same the Legislature by appropriate legislation and the people by constitutional amendment have seen fit to grant to the authorities in charge of highway construction and maintenance a liberal right in expropriation proceedings. Constitutional Article VI, Section 19.1, and Act 107 of 1954 (LSA-R.S. 48:441-8:460). They have eliminated the necessity of judicial determination of proving necessity in the taking of a person's property. Of course, the reasoning behind this is obvious. A great part of our tax money goes to the maintenance, operation and construction of highways. Highways, of course, transverse the State from one end to the other, and from an engineering point of view it is an economical undertaking to plan their construction on a statewide basis. When this is done it can readily be seen that to permit a judicial review and determination of each one of thousands of parcels of property necessarily taken to construct a highway . . . would be to impede the operation and construction to a point that would completely paralyze the Department of Highways. We have to consider these factors when we seek to determine the intent and meaning of the constitutional amendment and legislative act referred to. We assume that a department, such as the Department of Highways, with the responsibility of expending as much money as they have to expend, will employ competent engineers to draw the plans and to certify that the property proposed to be taken is for public use. Were we called upon to determine judicially the necessity, such as route, area, number of feet, nature of title, et cetera, we, not being engineers, would naturally have to depend upon the testimony of the engineers to arrive at a judicial determination as to the necessity."
*859 After a thorough study of former LSA-R.S. 48:441 et seq., I conclude that Guidry correctly interprets the statute as precluding judicial inquiry into the necessity for the taking. The Department of Highways cannot be divested of any property interest except upon a finding that the property was not taken for a public purpose. State, Through the Department of Highways v. Bradford, 242 La. 1095, 141 So.2d 378 (1962); State, Through the Department of Highways v. Mouledous, La.App., 199 So.2d 185 (1967), writ denied, 250 La. 934, 199 So.2d 927 (1967); State, Through the Department of Highways v. Bordages, La. App., 156 So.2d 617 (1963), writ denied 245 La. 462, 158 So.2d 612 (1963); Calhoun v. State, Through the Department of Highways, La.App, 152 So.2d 866 (1963); State, Through the Department of Highways v. Todd, La.App., 139 So.2d 223 (1962); State, Through the Department of Highways v. Waterbury, La.App., 125 So.2d 503 (1960). This well-established principle is a major basis for achieving the legislative goal: expeditious expropriation of property for the construction and maintenance of highways. Once title has vested under the statute, the only issues for judicial determination are the existence of a public purpose and the amount of compensation. The statute withdraws from judicial consideration the necessity for the taking, that is, the propriety and advisability of the acquisition. State, Through the Department of Highways v. Guidry, supra; State, Through the Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958); M. Dakin and M. Klein, Eminent Domain in Louisiana, 27-29, Chap. I, § 8(C), 369-370, Chap. VI, § 2(A) 2(c) (1970); Comment, Expropriation By Ex Parte Order For Highway Purposes in Louisiana, 26 La.L.Rev. 91, 98.
As Louisiana's "quick-taking" statute was closely patterned after the Federal Declaration of Taking Act, 40 U.S.C.A. § 258a et seq., federal jurisprudence interpreting that act is persuasive. State, Through the Department of Highways v. Macaluso, supra; State, Through the Department of Highways v. Baddock, La.App., 170 So.2d 5 (1964), writs denied, 247 La. 349, 170 So.2d 867 (1965). The federal jurisprudence is consistent with our holding in Guidry and the decisions that follow it. In United States v. 2,606.84 Acres of Land in Tarrant County, Texas, 432 F.2d 1286 (5th Cir. 1970), cert, denied, 402 U.S. 916, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1971), the Fifth Circuit stated:
"The argument that land sought to be condemned is not really necessary for the consummation of a plan is frequently made in condemnation cases in an attempt to defeat the taking. This argument, however, has been unanimously rejected by every court which has considered the matter. It is perfectly clear that the judicial role in examining condemnation cases does not extend to determining whether the land sought is actually necessary for the operation of the project. As the Supreme Court explained in Berman v. Parker, 1954, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27.
"* * *
"`It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch. See Shoemaker v. United States, 147 U.S. 282, 298, 13 S.Ct. 361, 390, 37 L.Ed. 170, 184; United States ex rel. Tennessee Valley Authority v. Welch, supra, 327 U.S. [546] at page 554, 66 S.Ct. [715] at page 718 [90 L.Ed. 843]; United States v. Carmack, 329 U.S. 230, 247, 67 S.Ct. 252, 260, 91 L.Ed. 209 [220.]' 348 U.S. at 35, 36, 75 S.Ct. at 104."
I conclude that our holding in State, Through the Department of Highways v. Guidry, supra, has a sound constitutional and statutory basis. Hence, I would reaffirm that decision.
The record reflects that the canal, built partially on the servitude expropriated, was designed for access to the construction *860 project. The Highway Department floated heavy materials through the canal, facilitating construction of the Interstate-10 segment. Clearly, the servitude was taken for a public purpose. I believe that the Highway Department's future need for the canal is beyond the scope of judicial consideration.
The majority overrules State, Through the Department of Highways v. Guidry, supra, and the long line of decisions following it. It does so by giving the words "for highway purposes" in the 1921 Constitution the meaning of "actually needed for highway purposes." In the light of the history of the "quick-taking" statute, this restrictive meaning is unsupported. See, e. g., State v. Bradford, 242 La. 1095, 145 So.2d 378 (1961).
The effect of this holding is to frustrate the salutary purpose of the "quick-taking" statute: to expedite the construction of highways. Hereafter, construction must be held in abeyance until the necessity of the taking has been litigated in the trial and appellate courts.
For the reasons assigned, I respectfully dissent.
TATE, Justice, dissenting.
I respectfully dissent from the majority's overruling of State of Louisiana Through the Department of Highways v. Guidry, 240 La. 516, 124 So.2d 531 (1960). This overruling represents a judicial usurpation of the power to review the necessity and extent of a taking for an undoubted public purpose, contrary to the legislative and constitutional intent.

ON REHEARING
DENNIS, Justice.
We granted a rehearing in these cases to reconsider our original decision relating to judicial review of the necessity and extent of the taking in ex parte highway expropriations.
The Department of Highways, seeking to take a 400-foot wide permanent servitude over two tracts of defendant's land in the Atchafalaya Basin for the purpose of dredging a 200-foot wide canal for access to a highway bridge construction site, proceeded under the quick-taking statute, Act 107 of 1954 (La.R.S. 48:441-160), and obtained an expropriation order from the district court. Defendant subsequently appeared and filed a motion to vacate or modify the order on various grounds. Evidence was adduced at trial of the motion that the Department had built boat launching ramps on or near its highway right of way from which if was permitting public entry to the canal for fishing and other recreation. The district court refused to vacate the taking or to reduce the estate taken to a temporary servitude, but the trial judge modified the ex parte order to provide that the permanent servitude be granted to the Department solely for purposes of highway construction, maintenance and repair related to the Atchafalaya Floodway Crossing project; that the canal not be a general public way or available for use by the public; that the defendant would have access to the canal, subject to the Department's rights; and that the Department's use of the 400-foot wide permanent servitude for the purposes of maintenance, repair or redredging of the canal after completion of the highway construction project would be limited to the area necessary for these purposes.
The Department appealed to the Court of Appeal, First Circuit, which reversed and remanded, holding that it was error for the trial judge to modify the expropriation order by restricting the servitude to use in connection with the construction, maintenance and repair of the highway project. Thereafter writs were granted here and, upon original hearing, being substantially in agreement with the trial judge, we reversed the court of appeal judgment and rendered judgment in accordance with our opinion.
The rationale of our opinion was that the authority granted the Legislature by Section 19.1, Article VI of the 1921 Constitution[1] *861 to authorize the quick-taking of property did not encompass the ability to expropriate property for any use other than highway purposes, and that Act 107 of 1954[2] did not exceed this authority despite the use of overbroad language in one section of the statute. Thus we indicated that, since the Department of Highways lacked the authority to expropriate property by ex parte order for any purpose other than a highway purpose, the district judge properly exercised his judicial authority by decreeing that the Department could not use the expropriated servitude for other purposes.
After reconsideration we are of the view that the foregoing portion of our opinion was correct. However, in the course of our original discussion we reconsidered and overruled a previous decision by this Court in State, Through the Department of Highways v. Guidry, 240 La. 516, 124 So.2d 531 (1960), and in so doing we may have implied that we approve of plenary judicial review of the necessity and extent of the taking in ex parte highway expropriations. We now conclude that it would be wrong to completely overrule State v. Guidry, supra, because its description of the judiciary's role in determining the purpose and the necessity of an ex parte highway taking needs explanation but was not wholly incorrect. Further, since we find that the trial judge correctly applied Article VI, § 19.1, La. Const. 1921, and Act 107 of 1954, the district court judgment should be reinstated in full without the qualifications imposed in our original opinion.
There is no real inconsistency between our interpretation of the constitutional and statutory quick-taking provisions and the decision in State v. Guidry, supra. It is true the Guidry court used imprecise language when it stated that one of the questions which courts may determine in ex parte highway takings is "whether the property was taken for a public purpose," id. at 240 La. 521 at 124 So.2d 532, without stating that courts may decide also if the taking was for a highway purpose. However, other passages of the opinion indicate the court did not intend to remove from judicial scrutiny actions by the Highway Department which exceed its constitutional or statutory authority.[3] Moreover, the only question of law considered in Guidry was "whether the question of the necessity for the taking of property expropriated by the Highway Department [in a quick-taking]. . . is subject to judicial review". Id., 240 La. at pp. 520-21, 124 So.2d at p. 532. The issue of whether the judiciary may review an ex parte expropriation to determine if the taking was for a highway purpose was not addressed by the court. Thus we think it clear the Guidry court intended in its opinion that the term "public purpose" connote "highway purpose" and that the court did not intend to imply that courts could not set aside ex parte expropriations of property for uses other than highway purposes.
*862 Because of the course taken in our original opinion we did not reach another issue which the Department implies has been laid to rest by the Guidry case. Defendant Jeanerette alleged that the Department's determination of the necessity and the extent of the taking should be vacated because it was made in bad faith and constituted an abuse of discretion. The Department argues that, under Guidry and the quick-taking statute, any judicial review whatsoever of the necessity of an ex parte highway expropriation is absolutely precluded. Presumably, under the Department's view, no amount of fraud, arbitrariness, bad faith or out-right oppression would suffice to permit a landowner to seek relief in court. The issue does not appear to have been presented in Guidry or actually decided in any other quick-taking case.[4] Accordingly, we will treat it as a question of first impression in this Court.
We cannot believe that the people of this State intended to insulate official misconduct from judicial scrutiny when they approved the grant of authority for the Legislature to enact a quick-taking statute. Article VI, § 19.1 (Act 548 of 1948, adopted November 2, 1948). There is certainly no hint of an intention to bring about such a result in the language of the constitutional provision.
The Louisiana quick-taking statute was closely patterned upon the Federal Declaration of Taking Act, 40 U.S.C.A. §§ 258a, et seq., and federal jurisprudence interpreting the act is persuasive authority. State, Through the Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958). Generally, the federal courts have said that the judicial role in examining condemnation cases does not extend to determining whether the land sought is actually necessary for the completion of the project. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Nevertheless, the United States Supreme Court has declined to rule out the possibility of judicial review where the administrative decision to take a particular property or property interest is alleged to be arbitrary, capricious or in bad faith.
United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209 (1946). Most of the federal courts of appeal have declared their power to review administrative or legislative determinations of necessity in such circumstances. United States v. 416.81 Acres of Land, 514 F.2d 627 (7th Cir. 1975); United States v. 2606.84 Acres of Land, 432 F.2d 1286 (5th Cir. 1970); Cf. Southern Pacific Land Co. v. United States, 367 F.2d 161 (9th Cir. 1966) and cases cited therein.
Virtually every state court which has considered this issue has decided that the judiciary will interpose in a case in which it does not merely disagree with the judgment of the taking authority but finds that the body has acted with total lack of judgment or in bad faith. See, 1 Nichols, The Law of Eminent Domain, § 4.11[2] (1976) and authorities cited therein.
After considering our law in light of these authorities, we conclude that the quick-taking statute bars judicial inquiry into the necessity of the taking if the Department has not made its determination arbitrarily, capriciously or in bad faith. We also conclude that Act 107 of 1954 and Article VI, § 19.1, La.Const. of 1921, do not preclude a judicial review of the determination of necessity for an ex parte highway expropriation in the event of such an abuse of discretion by the Department. In fact, we are convinced that due process of law demands a judicial review of whether the determination of necessity was arbitrary, capricious or in bad faith where the landowner alleges concrete facts which, if proven by convincing evidence, would constitute such a gross abuse of discretion.
In summary, therefore, when the Highway Department expropriates property *863 pursuant to Article VI, § 19.1, La.Const. of 1921, and Act 107 of 1954, there are three questions which the courts may determine: (1) whether the property was taken for a highway purpose; (2) whether the expropriating agency acted arbitrarily, capriciously or in bad faith in determining the necessity of the taking; and (3) the adequacy of the compensation. We will now consider the contentions of the parties in light of these principles and other pertinent rules of law.
Defendant contends that the servitude expropriated for the access canal was not taken for highway purposes because it is located outside the highway right of way. However, it is well settled that the Department of Highways' authority to expropriate property by ex parte order includes all property subject to eminent domain, wherever situated, provided that the taking is for highway purposes, i. e., for use in the building, maintenance and repair of the highways, regardless of whether the land to be taken is located within the highway right of way. La.Const. 1921, Art. VI, § 19.1; Act 107 of 1954; State v. Bradford, 242 La. 1095, 141 So.2d 378 (1962). In the instant case it is not disputed that the servitude was used by the Highway Department to give its contractors and materialmen access to the site of the construction of the highway bridges. Accordingly, it is clear that the expropriation at issue was effected for highway purposes.
Nevertheless, defendant argues, the expropriation order should be vacated because other existing waterways were suitable for the purpose to be fulfilled by the expropriation. As alternatives to this argument, defendant contends that the permanent 400-foot wide servitude for access in connection with the construction, maintenance and repair of the highway bridges should be restricted to a temporary construction easement or, at least, reduced in breadth to the width of the 200-foot wide canal proper. But it is well established jurisprudence that questions such as the location of the expropriation, the extent of the estate to be taken, the nature of the title to be taken, as well as the wisdom of pursuing a particular improvement project, relate to the necessity of the taking. M. Dakin and M. Klein, Eminent Domain in Louisiana, § 8C (1970) and authorities cited therein. As such, they are not subject to judicial determination or review in the absence of allegations of specific facts showing that the Highway Department's finding of necessity was arbitrary, capricious or in bad faith.
In the present case the defendant failed to allege sufficient facts which, if proven, would demonstrate a gross abuse of discretion by the expropriating authority. In this regard the defendant merely alleged that the Department had failed to avail itself of alternative existing public waterways which could have been used for access to the jobsite with minimum expense and inconvenience. Since the delegation of the power of eminent domain by the State to the expropriator necessarily leaves largely to the latter's discretion the location and area of land to be taken, defendant's allegations do not in our opinion set forth specific facts showing that the Department acted arbitrarily, capriciously, or in bad faith. Furthermore, the evidence in the record fails to carry defendant's heavy burden of proof in this regard. Although we do not necessarily agree that the route selected for the canal and the width of the servitude expropriated reflect ideally the high respect due private property rights by public officers, we nevertheless cannot say the Department's action was "without adequate determining principle or was unreasoned." See, United States v. Carmack, 329 U.S. at 243, 67 S.Ct. at 258.
As we noted earlier, under Article VI, § 19.1 of the 1921 Constitution and Act 107 of 1954, the Highway Department was authorized to expropriate property by ex parte order for highway purposes only. In its expropriation orders the Department sought and obtained nothing more than a permanent servitude "taken for highway purposes." In view of the Department's actions in putting to non-highway uses a canal constructed under the aegis of a servitude acquired for highway purposes, it was *864 correct and properly part of its judicial function for the trial court to clarify the orders of expropriation by more specifically limiting the use of the permanent servitude to highway purposes as dictated by the constitution, the quick-taking statute and the original orders of expropriation.
All other contentions of the parties have been adequately discussed in our original opinion.
For the reasons hereinabove stated, the judgment of the court of appeal is reversed and the judgment of the district court is reinstated at the cost of the respondent.
TATE, J., assigns additional concurring reasons.
SANDERS, C. J., dissents for the reasons assigned in his dissent on original hearing.
SUMMERS, J., dissents and adheres to the Court's original opinion.
DIXON, J., dissents.
TATE, Justice, concurring.
The writer concurs in the majority opinion insofar as it holds (1) that the present legislation authorizes the highway department to expropriate property only for highway purposes and (2) that, while the judiciary is not authorized to review the necessity of the taking, it may set aside, as not necessary a taking when the expropriation agency has acted arbitrary, capriciously, and in bad faith.
I further agree with the majority that no bad faith or arbitrariness is shown by the highway department's present taking of the access canal as a permanent servitude for highway purposes. The taking involved the expenditure of large public funds in the construction of the canal, permanent in nature although useful for highway purposes only in the initial construction of the canal. The use of this costly public improvement should be available for future highway-purpose use. The landowners are entitled neither to the windfall of the canal's acquisition without cost, nor to a claim for damages for the excavation of property to which they retain title.
As limited by its present factual context, the writer further concurs in the majority's holding that, in the expropriation proceeding itself which questions the validity of the taking, the judiciary may limit the subsequent use of off-highway property permanently taken for temporary construction purposes to the highway purposes for which (alone) properly taken.
I do have reservations, however, concerning the majority's action limiting the subsequent use of property permanently taken for highway purposes, pursuant to the expropriation agency's statutory and constitutional authority to do so. (For instance, a justified initial taking of land for highway purposes is not affected by the subsequent disposition of the land for other purposes, such as by the sale of highway surface no longer needed for highway purposes.) Once we have determined that the initial taking for highway purposes is valid, the department's subsequent use of the land for non-highway public purposes (such as recreational uses) is ordinarily irrelevant to the validity of the initial expropriation.
However, ultimately the writer concurs in the majority finding that the present extensive taking of off-highway canal property solely for temporary construction access purposes may properly be limited, if the issue is raised during the determination of the validity of the expropriation itself, to the sole purpose by reason of which the taking is valid (i. e., for highway purposes), insofar as this extensive taking is of property not within the highway right-of-way itself. Since the taking is valid only if for highway purposes (according to our construction of the present highway expropriation statute), in upholding the validity of this taking of off-highway property, the judiciary may properly limit its taking to the purposes for which expropriated, i. e., highway purposes.
If the taking  although allegedly for highway purposes  was actually intended to be for future recreational purposes, it is not a valid taking (under our construction of the present legislation). The district court's restriction to the use for highway *865 purposes of the property for temporary highway-construction purposes, under present circumstances, merely assures that the taking by the highway agency is within the legislative authorization.
In today's society, highway purposes of course may include reasonable adjuncts for public convenience and pleasure in the use of highways, such as roadside parks and rest stations. If, in addition, the legislature finds that a valid public purpose is served by permitting the highway agency to expropriate off-highway property for both present highway construction and also future non-highway public purposes (such as the present recreational canal), it seems to me that it may do so. However, the present statute does not authorize the highway department to expropriate for other than highway purposes.
Under the circumstances of the present case, I am therefore prepared to agree with the majority that the taking of the canal for highway purposes may be validly limited to the use for which the taking is lawfully authorized, i. e., highway purposes, at least when the landowner in the expropriation proceedings itself prays for such relief as to off-highway property permanently taken, not for the highway right-of-way itself, but in temporary aid of the highway's construction.
NOTES
[1] Section 19.1, Article VI, La.Const. 1921 provides:

"The Legislature shall have authority to authorize the taking of property for highway purposes by orders rendered ex parte in expropriation suits prior to judgment therein provided that provision be made for deposit before such taking with a court officer for the amount of appraisals of the property so taken and damages to which the owner thereof may be entitled, if any, which appraisals may be made in such manner as may be provided by law either before or after institution of suit, and need not be by judicially appointed appraisers."
[2] This act permitted ex parte expropriations and immediate possession by the State for highway purposes upon deposit of estimated adequate compensation for the taking in the registry of the court, at the same time preserving the property owner's subsequent right to contest in court the amount of compensation and the purpose of the taking. See, State v. Macaluso. 235 La. 1019, 1023, 106 So.2d 458 (1958).
[3] At page 522, 124 So.2d at page 533, it was more exactly stated that "* * * [T]he Legislature has delegated to the Highway Department the power to determine the necessity for expropriating property for highway purposes * * *." (Emphasis added). The opinion aptly quoted from State v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958) as follows: "This governing constitutional enactment, of course, overrides within its scope [for highway purposes] earlier expressions and holdings cited to the effect that the necessity of the taking is a matter for judicial determination." Id., 240 La. at p. 523, 124 So.2d at p. 533.
[4] Discussions of the question in original majority opinions were made dicta by the courts' opinions on rehearing in State, Department of Highways v. Bradford, 242 La. 1095, 141 So.2d 378, 384 (1962) and State, Department of Highways v. Webb, 209 So.2d 598 (La.App.2d Cir. 1968).