669 So.2d 566 (1996)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT
v.
ESTATE OF Charles E. GRIFFIN, et al.
No. 95 CA 1464.
Court of Appeal of Louisiana, First Circuit.
February 23, 1996.
*567 Bernard L. Malone, Jr., Baton Rouge, for Plaintiff-Appellant.
Charles E. Griffin, II, St. Francisville, for Defendant-Appellee.
Before SHORTESS, PARRO and KUHN, JJ.
SHORTESS, Judge.
The State of Louisiana, through the Department of Transportation and Development (plaintiff), is attempting to expropriate additional right of way from Mary Ruth Spillman Griffin and the estate of Charles E. Griffin (defendants) for the replacement of a bridge. Plaintiff initially filed a petition for the taking pursuant to the requirements of the quick-taking statute, Louisiana Revised Statutes 48:441 to 48:460.[1] Plaintiff's plan is to *568 replace the existing truss bridge with a larger bridge, which will require more property than the sixty-foot right of way plaintiff already owns. Defendants filed a motion to dismiss the expropriation order, contending the data on which the selected bridge design is based is incorrect. Correct data, defendants claim, would show a smaller bridge could be placed at the site within the existing right of way, making the taking unnecessary.
The trial court found the design of the bridge was based on assumptions which, more likely than not, were incorrect. The court found plaintiff was arbitrary and capricious in expropriating property on the basis of a design based on assumptions which may be incorrect, particularly after being put on notice the data may be incorrect. It dismissed the March 24, 1994, expropriation order with prejudice. Plaintiff appealed.

Legal Principles
Under the highway quick-taking statute and the jurisprudence, only three issues may be reviewed by the trial court: (1) whether the property was taken for a highway purpose, (2) whether the expropriating agency acted arbitrarily, capriciously, or in bad faith in determining the necessity of the taking, and (3) whether the compensation was adequate. Red River Waterway Com'n v. Fredericks, 566 So.2d 79, 83 (La.1990); State v. Jeanerette Lumber & Shingle Co., 350 So.2d 847, 862-63 (La.1977).[2] The decision of the expropriating agency may not be set aside as long as it acts reasonably and in good faith in determining the taking is necessary. Red River Waterway, 566 So.2d at 83. The location and extent of the expropriation, the nature of the title to be taken, and the wisdom of pursuing a particular improvement project relate to the issue of the necessity of the taking. Id.; M. Dakin & M. Klein, Eminent Domain in Louisiana § 8C (1970). Although the state has wide discretion in expropriation matters, it is entitled to take only what it needs for public purposes and will not be permitted to take more than what is reasonably sufficient and suitable for its particular need. State v. Landry, 507 So.2d 252, 254 (La.App. 3d Cir.), writ denied, 513 So.2d 290 (La.1987). An expropriation beyond the public interest is illegal and unconstitutional. Calcasieu-Cameron Hosp. Serv. Dist. v. Fontenot, 628 So.2d 75, 78 (La.App. 3d Cir. 1993), writ denied, 94-0168 (La. 3/18/94), 634 So.2d 854; Landry, 507 So.2d at 254. Furthermore, "expropriation `is special and exceptional in character, in derogation of common right, and must be strictly construed.'" Jeanerette Lumber, 350 So.2d at 855-56, quoting Orleans-Kenner Elec. Ry. Co. v. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93 (1915).
The standard is whether the expropriator acted in bad faith or so arbitrarily and capriciously that its action was without an adequate determining principle or was unreasoned. The expropriating agency is accorded great discretion but may abuse it by acting without considering and weighing relevant factors, including the availability of an alternate route, costs, environmental factors, long-range area planning, and safety. Red River Waterway, 566 So.2d at 83. The landowner attacking the taking bears this heavy burden of proof. Id. at 83.

Facts
Plaintiff already owns the bridge it seeks to replace in addition to a sixty-foot right of way along the approaching two-lane, rural state road. Plaintiff seeks to expropriate an additional fifty to sixty feet of right of way extending a distance of 800 feet in full ownership.
William Hickey, Chief Design Engineer for the Department of Transportation and Development (DOTD), was the road design engineer *569 for the project. He testified the bridge, located on Louisiana Highway 421, had come up as the next project on a long-range planning list of bridges in the state scheduled for replacement when this project was initiated.[3] The bridge designed for this site would require a thirty-eight-foot clear roadway and is supposed to last fifty years. It will be higher and wider than other bridges in this area. As required by state law,[4] the design conforms to safety standards and guidelines set forth by the American Association of State Highway and Transportation Officials (AASHTO). AASHTO guidelines set up the acceptable widths for the bridge and roadway based on traffic count, speed limits, high-water elevation, and other data. The plans also call for a higher and wider bridge because of the stopping sight distance requirement relative to a curve approaching and feeding directly into the bridge on one side. The bridge cannot be raised to meet the sight distance requirements and stay within the existing right of way, Hickey testified.
Hickey stated he did not inspect the site, but it "probably" was inspected every two years. He did not know if a field inspection was done, but, if it was, he thought it would have been done in 1992 or 1993. Regarding traffic count, Hickey said DOTD sends a memo to the traffic and planning division requesting traffic volumes, and the division furnishes the statistics. It is his understanding these traffic counts are taken on a continuing basis on various routes, then are projected over time. He stated the division may not even actually count traffic on Highway 421, may not count on a road in the same parish as this area of Highway 421, and may have counted as long ago as twenty years. Hickey did not know anything about the actual traffic count, the number of other bridges on this road, whether any of these bridges were replaced within the existing right of way, or the source of the rain data indicating high-water marks.
Richard Savoie, a DOTD project development engineer in the road design section, also testified. He stated westbound drivers must be able to see around the bridge and around the curve a certain distance, according to the AASHTO design standards. The bridge had to be widened because a barrier rail on the north side was an obstruction to the sight distance. Flattening the curve would allow placement of a smaller bridge, but Savoie said DOTD decided against this possibility because of projected "meandering" of Thompson Creek. Hydraulic data indicated the creek would move closer to the roadway, which potentially could put the bridge in future danger with respect to pilings and end-abutment supports. However, Savoie agreed if the hydraulic information was incorrect, the bridge did not need to be raised. He did not know the source of the hydraulic data and stated, "Evidently someone had some data.... I don't know who took this information."
Charles Thomas Snyder, a professional land surveyor hired by defendants, testified he visited the site twice. Plaintiff's high-water mark was three to three and one-half feet higher than what he found. He also observed approximately five to six cars per hour traveling over the bridge, compared to plaintiff's count of twelve per hour. In his opinion, the right of way and bridge size proposed were excessive, but he admitted he does not do design work and could not testify on this issue.
Also testifying for defendants was Eric Arender, who was qualified as an expert in construction of highways and bridges. He stated that in a two-hour period, he observed four vehicles traveling over the bridge. From his observations, plaintiff's traffic count and high-water marks were excessive. He could not testify regarding design standards.
Defendants' counsel, Charles Griffin II, was allowed to testify.[5] Griffin stated he maintains a general law practice in the parish, *570 which includes title work. He said plaintiff's title description in the petition takes property north of the road out in his pasture, not along the side of Highway 421. The title description, he said, does not match the design plans. Griffin testified he informed plaintiff of the title problem and plan discrepancy, but plaintiff refused to revise the plans. Because this title will be recorded in the conveyance records, the discrepancy could cause a future title problem. Griffin said he has lived within eyesight of the bridge thirty-one years, and the traffic count has never been as high as plaintiff's estimates.
After hearing all the testimony, the trial court ruled in defendants' favor. The trial court's factual determinations as to the necessity or expediency of an expropriation will not be reversed on appeal in the absence of manifest error. Calcasieu-Cameron Hosp., 628 So.2d at 78. The court found the assumptions on which the design was based were "more likely than not ... incorrect." The court also was not impressed by plaintiff's indifference to the potentially incorrect information after being put on notice it might be incorrect.
Even though the expropriating authority has wide discretion in determining the necessity and extent of a taking, this discretion is not unbridled. Our supreme court has stated "the expropriating authority should be in a position to justify and support with cogent reasons" the taking for an appropriate purpose. Jeanerette Lumber, 350 So.2d at 855.
The weight to be given to the testimony of experts is largely dependent upon the facts upon which their opinions are based. Quinones v. United States Fid. & Guar. Co., 93-1648 (La. 1/14/94), 630 So.2d 1303, 1308. Neither of plaintiff's design engineers could justify the data, particularly traffic count and hydraulic evaluation used in selecting the design for this bridge. They could not identify the source of their data, much less testify as to its accuracy. No one who could do so testified. Had they been able to do so, this may have been a case of manifest error. Plaintiff's witnesses admitted if defendants' information more accurately reflected the actual site data, a smaller bridge design might be acceptable according to AASHTO guidelines which could be built within the existing right of way. The trial court was not manifestly erroneous in finding plaintiff acted arbitrarily and capriciously.
Defendants answered the appeal seeking court costs and attorney fees for this appeal. The request seems reasonable; however, no attorney fees were requested or awarded at the trial court level. More importantly, attorney fees can only be awarded pursuant to express statutory authority, and we know of none which would permit an award of attorney fees under these circumstances. All costs in the amount of $904.30 are assessed to plaintiff.
For the foregoing reasons, the judgment of the trial court dismissing the expropriation order of March 24, 1994, is hereby affirmed.
AFFIRMED.
NOTES
[1] These statutes authorize the taking of property, including possession and title, prior to a hearing in the trial court by orders rendered ex parte in expropriation suits.

Within 20 days, the defendant may contest the validity of the taking, and, if he prevails, has the right to be compensated for the period during which the property was in the possession of the plaintiff. La.R.S. 48:447 (amended by La. Acts 1988, No. 882, § 1); La.R.S. 48:460.
Divestiture of title under these statutes is "in a sense only temporary." State v. Olinkraft, Inc., 350 So.2d 865, 868 (La.1977). The supreme court approved of judicial review of takings under this statute for abuse of discretion in State v. Jeanerette Lumber & Shingle Co., 350 So.2d 847, 862-63 (La.1977) and Olinkraft.
[2] Defendants did not contest the purpose for which the property was sought or the amount of compensation.
[3] Louisiana Highway 421 is a sixteen-mile state road that lies in the northern portion of West Feliciana Parish.
[4] La.R.S. 48:35.
[5] The transcript indicates the trial court noted it was unusual for the attorney in a case to testify as a witness but made an exception in this case because he is a party.