GUIDRY, J.
|2ExxonMobil Pipeline Company (Exxon-Mobil) appeals from a trial court judgment dismissing its petition for expropriation of land owned by Union Pacific Railroad Company (Union Pacific). For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
ExxonMobil is a common carrier pipeline company and in 1979, constructed an eight inch ethylene pipeline in Plaquemine, Louisiana servicing the Georgia Gulf Chemicals and Vinyls facility.[1] In 2007, ExxonMobil constructed an additional eight inch ethylene pipeline, which ties in to the existing pipeline at a valve site located approximately one thousand feet east of Highway 1 in Plaquemine and runs east to the Shinteh polyvinyl chloride facility located on Highway 105. The new pipeline does not cross, but runs parallel to, property owned by Union Pacific.
ExxonMobil approached Union Pacific about acquiring access across Union Pacific’s property in order to reach ExxonMo-bil’s valve site for maintenance and inspections. When ExxonMobil’s request was denied, ExxonMobil filed a petition for expropriation, asserting that in order to maintain and inspect the pipeline servicing Shintech, it needed a right-of-way and access road servitude across land owned by Union Pacific to access the valve site and pipeline. Following a bench trial, the trial court signed a judgment in favor Union Pacific and against ExxonMobil, dismissing all of ExxonMobil’s claims with prejudice. ExxonMobil now appeals from this judgment.
1 .DISCUSSION
Expropriation of private property for public purposes is addressed in Article I, Section 4 of the Louisiana Constitution of 1974, which provides in pertinent part:
Property shall not be taken or damaged by a private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question.
In addition, La. R.S. 45:254 provides, in pertinent part:
*248 All persons included in the definition of common carrier pipe lines as set forth in R.S. 45:251[2] have the right of expropriation with authority to expropriate private property under the state expropriation laws for use in its common earlier pipe line business, and have the right to lay, maintain and operate pipe lines, together with telegraph and telephone lines necessary and incident to the operation of these pipe lines, over private property thus expropriated, and have the further right to lay, maintain and operate pipe lines along, across, over and under any navigable stream or public highway, street, bridge or other public place, and also have the authority, under the right of expropriation herein conferred, to cross railroads, street railways, and other common carrier pipe lines by expropriating property necessary for the crossing under the expropriation laws of this state.
Expropriation laws are special and exceptional in character, in derogation of common rights, and as such, must be strictly construed. United Gas Pipe Line Company v. Blanchard, 149 So.2d 615 (La.App. 1st Cir.), writ denied, 149 So.2d 615 (1963).
As a common carrier, ExxonMobil has the right to expropriate private property for use in its common carrier pipeline business, but in order to exercise that right, must demonstrate that the expropriation is for a public and necessary purpose. See Louisiana Resources Company v. Greene, 406 So.2d 1360, 1362-1363 (La.App. 4th Cir.), writ denied, 412 So.2d 84 (La.1982).
| ,[In determining whether a proposed expropriation is for a public purpose, the courts look to the extent of the public’s right to its use rather than the number of persons actually using the property at any given time. Texas Pipe Line Company v. Stein, 190 So.2d 244, 252 (La.App. 4th Cir.1966), rev’d on other grounds, 250 La. 1104, 202 So.2d 266 (1967). Further, there must be a general public right to a definite use of the property, as distinguished from a use by a private individual or corporation which may prove beneficial or profitable to some portion of the public. Terrebonne Parish Police Jury v. Kelly, 472 So.2d 229, 232 (La.App. 1st Cir.1985) (citing River & Rail Terminals v. Louisiana Railway & Navigation Company, 171 La. 223, 130 So. 337, 340 (La.1930)). However, actual use by the public is not the criteria by which public purpose is determined. Texas Pipe Line Company, 190 So.2d at 250.
Additionally, article I, section 4, requires that a private entity demonstrate a necessary purpose. “Necessary” refers to the necessity of the purpose of the expropriation as opposed to the necessity for a specific location. Claiborne Electric Cooperative, Inc. v. Garrett, 357 So.2d 1251, 1255 (La.App. 2nd Cir.3/27/78), writ denied, 359 So.2d 1306 (La.1978).
It is the responsibility of the courts to determine, based on the particular facts presented, whether a taking is for a necessary and public purpose, and a trial court’s determination on this issue should not be reversed on appeal absent manifest error. See Terrebonne Parish Police Jury, 472 So.2d at 231; Coleman v. Chevron Pipe Line Company, 94-1773, p. (La.App. 4th Cir.4/24/96), 673 So.2d 291, 296, writ denied, 96-1784 (La.11/1/96), 681 So.2d 1259; Town of Vidalia v. Unopened Succession *249 of Ruffin, 95-580, p. 6 (La.App. 3rd Cir.10/4/95), 663 So.2d 315, 319; and Calcasieu-Cameron Hospital Service Distinct v. Fontenot, 628 So.2d 75, 78 (La.App. 3rd Cir.1993), writ denied, 94-0168 (La.1994), 634 So.2d 854.
| sIn the instant case, ExxonMobil seeks to expropriate a right of way to build an access road solely to enable it to access its pipeline to perform routine maintenance and inspections. ExxonMobil asserts that the pipeline serves a public purpose and that the access road is necessary to maintain that public purpose. However, the record is devoid of any evidence that the right of way and proposed access road itself will serve a public purpose. In fact, the evidence presented at trial suggests that the portion of the access road crossing Union Pacific’s property will be a private crossing, with a locked gate that will only be accessible by ExxonMobil. Further, according to the record, the access road will only be used by ExxonMobil to access its pipeline at the valve site to perform routine maintenance and inspections. None of this evidence demonstrates, however, that the public has a general right to a definite use of the property.
ExxonMobil relies on two supreme court cases for the proposition that an access road itself serves a public purpose. However, we find these highway quick-taking cases to be inapplicable. First, in State v. Jeanerette Lumber & Shingle Company, 350 So.2d 847 (La.1977), the Louisiana Department of Highways sought to expropriate a permanent 400 foot servitude, including a 100 foot access canal. The supreme court examined whether the Department of Highways established that the taking of the 400 foot servitude, particularly the 100 foot wide access canal, was for a highway purpose, as the case involved the highway quick-taking statute. As noted by the supreme court, a highway purpose is distinct from, and unconnected to the more general notion of public purpose. See Jeanerette, 350 So.2d at 855. Ultimately, the supreme court determined that the Department of Highways failed to establish that the servitude was sought for a highway purpose, as the access canal and surrounding property was primarily used to provide the public with access to the Atchafalaya Swamp for recreational purposes.
|fiIn addition, in Red River Waterway Commission v. Fredericks, 566 So.2d 79 (La.1990), the Red River Waterway Commission sought to expropriate a strip of land in order to acquire a route for building a permanent access road to Lock and Dam Number 3. Again, the supreme court examined the highway quick-taking statute, but his time, only addressed whether the Red River Waterway Commission acted arbitrarily, capriciously, or in bad faith in determining the necessity of the taking. The supreme court specifically did not address whether the taking was for a public purpose. As such, we find these two cases to deal with issues inapposite to those currently before this Court.
Finally, ExxonMobil asserts that the right of way and access road are required to ensure the safe operation of the pipeline and to ensure the safety of the residents of that area. Generally, a public purpose is found when the purpose is to promote the public health, safety, and morals of the residents or inhabitants of a state or political subdivision. See Terrebonne Parish Police Jury, 472 So.2d at 231-232 (citing State ex rel. Porterie v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725 (La.1938)). However, the cases in which such a public purpose has been found involved the state or political subdivision expropriating land, where the land itself was needed to protect the safety of the public. See Terrebonne Parish Police Jury, 472 So.2d at 232 (the *250 Police Jury sought to expropriate a right of way to drain a subdivision and to receive effluent overflow from a sewerage oxidation pond in which sewerage is pumped from the subdivision, without which, raw sewerage would be pumped on to the subdivision residents property, exposing residents to health hazards); see also State ex re. Porterie, 182 So. at 745-746 (the supreme court upheld the constitutionality of the Slum Clearance or Housing Authority Act, which provided for expropriation by the New Orleans Housing Authority of property located in the slums to erect new buildings and provide housing to low-income residents.)
|7In the instant case, the land sought to be expropriated by ExxonMobil would not itself be used to protect the safety of the public, but rather, would only be used by ExxonMobil to access its pipeline and right of way to perform statutorily required maintenance and inspections. See 49 C.F.R. § 195.412; 49 C.F.R. § 195.420; 49 C.F.R. § 195.452. Accordingly, we find no error in the trial court’s determination that ExxonMobil failed to establish a public and necessary purpose for the expropriation of the right of way and access road servitude across property owned by Union Pacific.[3]
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are to be borne by the appellant, ExxonMobil Pipeline Company.
AFFIRMED.
KUHN, J., dissents & assigns reasons.

. At the time the pipeline was constructed, Georgia Gulf was known as Georgia-Pacific Corporation.

. Louisiana Revised Statute 45:251(1) defines a "common carrier'' as including all persons engaged in the transportation of petroleum as public utilities and common carriers for hire; or which on proper showing may be legally held a common carrier from the nature of the business conducted, or from the manner in which such business is carried on. ExxonMo-bil and Union Pacific stipulated prior to trial that ExxonMobil is a common carrier.

. On appeal, ExxonMobil asserts that the trial court committed legal error. However, from our review of the record, we do not find such legal error. During the trial, and in its reasons for judgment, the trial court discussed the public's right to use the property sought to be expropriated and cited Texas Pipe Line Company v. Stein, 190 So.2d 244 (La.App. 4th Cir.1966). Though other circuit courts of appeal have adopted a more expansive definition of public purpose, recognizing a purpose that will benefit the public interest, this circuit has followed the more restrictive definition of the public's right to use as articulated in Terrebonne Parish Police Jury v. Kelly, 472 So.2d 229, (La.App. 1st Cir.1985). Accordingly, we find no error in the trial court’s application of the right to use standard, particularly given that the proposed expropriation is sought by a private entity.
Further, having found no error in the trial court’s determination that ExxonMobil failed to establish a public purpose for the expropriation, we pretermit discussion of whether ExxonMobil abused its discretion in selecting the route to access its valve site.