MOORE, J.
| ]Dr. and Mrs. Pierce Nunley appeal a judgment that granted Acadian Gas Pipeline System (“Acadian”) a pipeline servitude across the Nunleys’ 400-acre tract in DeSoto Parish. We affirm.

Procedural History

Acadian filed this petition on February 19, 2010, alleging that it had a certificate of transportation from the Department of Natural Resources entitling it to expropriate necessary private property under the general state expropriation laws and the *459 power to expropriate property necessary for transporting and supplying the public with natural gas under La. R.S. 30:554 A(2) and 19:2(5). Acadian alleged it was constructing a natural gas pipeline between Napoleonville and Mansfield to meet the demands and needs of the public, and that a 42-inch pipeline would have to cross the Nunleys’ 400-acre tract (“the subject tract”) in DeSoto Parish. Acadian also alleged that it had negotiated with the Nunleys in good faith but the parties could not agree as to just compensation and other terms and conditions. Acadian demanded permanent and temporary ser-vitudes to construct and operate the pipeline, upon the payment of just compensation.
The Nunleys filed exceptions of vagueness and no cause of action, urging that Acadian alleged insufficient facts to show a public and necessary purpose, and a general denial. At trial, Dr. Nunley made clear that he took offense at Acadian’s petition: nobody from Acadian had ever called him to discuss this servitude. Some months earlier one of Acadian’s landmen had talked to Dr. Nunley’s father-in-law, Dave Moody, about placing a pipeline on a separate, 160-acre tract owned by the Nunleys and |2Moody several miles south of the subject tract. Then, on January 20, Acadi-an sent Dr. Nunley a letter asking permission to survey the subject tract, and threatening legal action if he did not respond within three days. Dr. Nunley briskly replied that nobody was allowed to trespass on his property without -written consent.
On February 2, Acadian again wrote Dr. Nunley, stating that it had selected the subject tract for the pipeline, explaining that a servitude was not a sale of the property, offering him a right-of-way agreement and $84,681.60 in compensation, asking for permission to survey, and stating Acadian’s goal to “work with each and every landowner to reach an amicable agreement.” Dr. Nunley rebuffed this letter as well. He testified he would have been willing to talk to them about it, but he was unwilling to accept their “take it or leave it” stance. As noted, Acadian filed this suit on February 19.
In May 2010, Acadian obtained a court order allowing it to enter the subject tract to survey. Shortly before trial, Acadian filed a motion in limine to exclude any evidence of good faith negotiations, a requirement for expropriation under R.S. 19:2, on grounds that the Nunleys waived this by failing to file a dilatory exception of prematurity. The Nunleys conceded the waiver but argued that if Acadian could show a public and necessary purpose under La. Const. Art. 1, § 4, then they would use any relevant evidence to prove that Acadian selected this route “arbitrarily, capriciously or in bad faith.” ExxonMobil Pipeline Co. v. Union Pacific R. Co., 2009-1629 (La.3/16/10), 35 So.3d 192. They maintained that Acadian failed to | oconsider the site selection criteria outlined in Recreation & Park Comm’n v. C & S Development Inc., 97-2652 (La.7/8/98), 714 So.2d 706, and thus the selected route was arbitrary, capricious or in bad faith.

Summary of Trial Testimony

At trial, Acadian’s director of business development, Rocky Story, testified that in response to growing demand, hurricane threats in south Louisiana and the discovery of the Haynesville Shale, Acadian had decided in 2008 to install a 142-mile pipeline from Napoleonville in southeast Louisiana to Mansfield in northwest Louisiana. Acadian’s senior project manager, Don May, testified that although there was no clear-cut north-south corridor, the route ultimately selected crossed the subject tract along with 436 other individual parcels of land. In DeSoto Parish, the pipe *460 would have a diameter of 42 inches and be buried 30 inches deep, requiring a 50-foot servitude and costing $4.5 million per mile.
Mr. May also testified that Acadian had traced an initial route based on a “desktop” study using aerial photos and topographic maps. The initial route would have bypassed the subject tract, running some 7,000 feet to the east. However, his men physically inspected that route and performed two flyovers; they discovered some wetland areas, extensive timber growth, an auto junkyard and two sharp crossings under 1^49, all of which posed serious “constructability” issues. They therefore did another flyover and noticed two existing overhead electric powerlines running north-to-south over the subject tract. Mr. May ordered another ground-level survey and flyover, and decided that following the existing electrical servitude posed |4less risk of environmental impact and required only one Interstate crossing. He also testified that the company made adjustments to the new route to keep greater distance from a house, the Mansfield Battlefield site and a working coal mine, but the new route was still 1 ½ miles shorter than the initial route.
Mr. May conceded that he considered only two routes, the initial route that bypassed the subject tract, and the selected route that bisected it; he did not consider 10 or 12 alternate routes, as this would take too much time. On cross-examination, he admitted that aside from the flyovers and the physical observations of his men on the ground, all his work had been “desktop,” generating no daily logs, papers or reports reflecting environmental or other assessments.
Dr. Nunley testified that his first communication from Acadian regarding the subject tract was a letter on January 20, 2010; Acadian had followed up with a letter on February 2, requesting a permanent 50-foot servitude and a temporary (for construction) 60-foot servitude for a total of $84,681.60. Dr. Nunley testified that he wanted to know more about the servitude before he granted it, and he was really just confused by Acadian’s conduct. He maintained that if Acadian would “work out an appropriate agreement” and not just present a “take it or leave it” offer, he would grant the servitude. He firmly stated he did not want a natural gas pipeline under his “pristine” farmland, but would agree to it if Acadian would take out a mineral lease on the subject tract.
|fiDr. Nunley presented the testimony of an expert in civil engineering, Frank Willis. Although he had never designed or selected the route for a natural gas transmission pipeline, he testified that it was impossible to select such a route strictly by desktop work and a helicopter flyover. Based on the lack of documentation — no photos, field notes, cost estimates, interviews with landowners — he felt that Acadi-an did not consider the appropriate factors. He suggested that Acadian picked the route first, and then weighed the factors. On cross-examination, he agreed that the 42-inch pipeline was necessary and would not state that the initial route was preferable. However, he insisted that failure to maintain the data used was engineering malpractice.

Action of the District Court

In a written ruling, the district court cited Acadian’s expropriation authority under R.S. 30:554 A(2) and 19:2(5) and summarized the facts. The court found that Acadian, in its haste to acquire servi-tudes for its pipeline, had indeed failed to negotiate, but the Nunleys waived the issue by not filing an exception of prematurity. The court also found a public and necessary purpose for the pipeline, justifying expropriation under La. Const. Art. 1, § 4. The issue was therefore whether *461 Acadian abused its discretion in selecting the route by acting “in bad faith or so capriciously or arbitrarily that its action was without an adequate determining principle or was unreasoned.” Red River Waterway Comm’n v. Fredericks, 566 So.2d 79 (La.1990); United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209 (1946). An expropriator should consider “the availability of alternate sites, costs, 1 f,environmental factors, long-range planning, and safety considerations.” Recreation & Park Comm’n v. C & S Development, supra. The court found, however, that “once removed from the duty to negotiate, a pipeline company has virtually unassailable discretion.” The court agreed with the Nunleys that Acadian failed to preserve and produce “data such as designs, photographs, field notes, and con-structability studies,” but recognized that the supreme court has recently approved the use of testimonial evidence of the site selection process instead of documentation. ExxonMobil Pipeline Co. v. Union Pacific R. Co., supra.[1] The court reluctantly found that Mr. May’s testimony satisfied the requisite criteria. Finally, the court noted that Acadian was not required to consider the landowner’s convenience. La. R.S. 19:2; Louisiana Power & Light v. Caldwell, 360 So.2d 848 (La.1978). The court therefore granted Acadian’s request for expropriation, rendering judgment to that effect and ordering Acadian to pay just compensation of $84,681.60.

Synopsis of Arguments

The Nunleys have appealed, raising two assignments of error. First they contend the court erred in its application of the legal standard to Acadian’s expropriation of private property. Expropriation statutes must be strictly applied; a landowner attacking a taking must show the expropriator acted “without consideration or adjustment with reference to principles, circumstances or significance.” Red River Waterway Comm’n v. Fredericks, supra. Not only are the facts in ExxonMobil distinguishable, |7but Justice Knoll’s dissent comes closer to traditional, strict construction. The instant case is closer to State v. Estate of Griffin, 95-1464 (La.App. 1 Cir. 2/23/96), 669 So.2d 566, which found an arbitrary and capricious taking, and to the Florida cases of Florida Power & Light Co. v. Berman, 429 So.2d 79 (Fla. 4 DCA 1983), and Florida Power Corp. v. Gulf Ridge Council, 385 So.2d 1155 (Fla. 2 DCA 1980), which reached similar results. Mr. May’s testimony, under close scrutiny, is riddled with omissions and exaggerations, such that the court could not reasonably find that Acadian ever considered any other route. Finally, the court confused the dilatory issue of “good faith negotiations” with the merit-based issue of “bad faith exercise of expropriation authority.” The judgment should be reversed owing to these legal and factual errors.
Second, they urge that the court erred in failing to impose a negative presumption due to Acadian’s failure to preserve and/or produce the engineering data and evidence supporting route selection and its alleged weighing of the factors. The failure to produce evidence within its control creates a presumption that the evidence, if produced, would have been unfavorable to Acadian. Allstate Ins. Co. v. Ford Motor Co., 00-710 (La.App. 3 Cir. 11/2/00), 772 So.2d 339. The Nunleys’ expert civil engineer, Frank Willis, testified that failure to retain the kind of data involved in this case would be malpractice. The court should supply the presumption that Acadian simply never performed the requisite studies.
*462 Acadian responds that the court’s factual findings are not plainly wrong; placing the pipeline servitude along the preexisting powerline [ ¡¡servitude minimized the impact on all the affected landowners along that route. An objecting landowner must meet a “heavy burden of proof’ to show that the expropriator acted arbitrarily, capriciously or in bad faith. State v. Jeanerette Lumber & Shingle Co., 350 So.2d 847 (La.1977), rejected the essence of the Nunleys’ argument — that because an alternative route was available, the option selected must have been arbitrary. Earlier cases applied a presumption that the expropriator acted in good faith. Tennessee Gas Transmission Co. v. Violet Trapping Co., 248 La. 49, 176 So.2d 425 (1965); Texas Eastern Transmission Corp. v. Bowie Lumber Co., 176 So.2d 735 (La.App. 1 Cir.1965). Mr. May’s testimony satisfied all the requirements; not only the supreme court in Exx-onMobil, but a federal court in Illinois Central R. Co. v. 16.032 Acres of Land, 1999 WL 1276835 (E.D.La.12/22/99), has utilized testimony rather than “hard data” to find that the expropriator considered the relevant criteria. Griffin, supra, and the Florida cases are inapposite. Finally, there is no authority for requiring the expropriator to memorialize its proceedings in writing. ExxonMobil refutes this position, and there is no reason to apply a rule of spoliation.

Applicable Law

Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner. La. Const. Art. 1, § 4(B)(4); ExxonMobil Pipeline Co. v. Union Pacific R. Co., supra. All persons receiving a certificate of transportation from the commissioner of conservation shall possess the right of expropriation with authority to |9expropriate private property under the general state expropriation laws. La. R.S. 30:554 A(2). When a price cannot be agreed upon with the owner, any corporation created for the piping and marketing of natural gas for the purpose of supplying the public with natural gas, may expropriate needed property. La. R.S. 19:2(5). Expropriation laws are special and exceptional in character, in derogation of common rights, and as such must be strictly construed. ExxonMobile Pipeline Co. v. Union Pacific R. Co., supra; State v. Jeanerette Lumber & Shingle Co., supra.
In ExxonMobil, supra at 12-13, 35 So.3d at 200, the supreme court explained the operation of this law (with emphasis added and some citations omitted):
In challenges to the necessity of a taking, the landowner must prove that the legislatively-authorized expropriator exercised “its large discretion” arbitrarily, capriciously, or in bad faith. Red River Waterway Comm’n v. Fredericks, [supra ]. Whether the expropriator’s purpose is public and necessary is a judicial determination that will not be reversed on appeal absent manifest error. Calcasieu-Cameron Hosp. Serv. Dist. v. Fontenot, 628 So.2d 75, 78 (La. App. 3 Cir.1993), writ denied, 94-0168 (La.3/18/94), 634 So.2d 854. In the context of expropriation, “necessary” refers to the necessity of the purpose for the expropriation!;,] not the necessity for a specific location. Calcasieur-Cameron Hosp. Serv. Dist., 628 So.2d at 78. Once public necessity is established, the extent and the location of property to be expropriated are within the sound discretion of the expropriation authority and determination of same will not be disturbed by the courts if made in good faith. Id.
The criteria to be considered by the expropriator in determining the location *463 and extent of the property to be expropriated inelude[] factors such as costs, environmental impact, long range area planning, and safety considerations. Red River Waterway Comm’n, [supra ]. The amount of land and the nature of the acreage taken must be reasonably necessary for purpose of the expropriation, but it is not necessary “to show actual, immediate, and impending necessity Imfor the expropriation.” City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675, 677 (1930). The suitability of the property for expropriation is primarily a question of fact on which the judgment of the trial court will not be disturbed unless manifestly erroneous. Board of Com’rs of New Orleans Exhibition Hall v. Missouri Pacific R. Co., 625 So.2d 1070, 1073 (La.App. 4 Cir. 1993), writ denied, 93-3088, 93-3100 (La.1/28/94), 630 So.2d 802.
An expropriator enjoys a presumption that the route chosen is the best and most feasible. Texas Eastern Transmission Corp. v. Bowie Lumber Co., supra. The landowner attacking the taking must show that the expropriator exercised its large discretion “without consideration or adjustment with reference to principles, circumstances or significance.” Red River Waterway Comm’n v. Fredericks, supra. The landowner’s burden in such a case is “heavy.” Id.; City of Baton Rouge v. Johnca Properties LLC, 2003-0632 (La. App. 1 Cir. 2/23/04), 873 So.2d 693, writ denied, 2004-0696 (La.5/7/04), 872 So.2d 1083.

Discussion

The Nunleys contend that because expropriation derogates from the free enjoyment of private property, the court committed legal error in finding that a pipeline company “has virtually unassailable discretion.” While the court’s statement may have been slightly overbroad, we perceive no legal error. Acadian stated a public necessity to provide a steady flow of natural gas in light of growing demand, hurricane threats along the coast, and the availability of huge resources in the Haynesville Shale. The court found that this proved a “public and necessary purpose” and satisfied the baseline requirement for expropriation by a private entity. La. Const. Art. 1, § 4(B)(4); La. R.S. 19:2(5), 30:554 A(2).
| nThe supreme court has repeatedly held that once a public and necessary purpose is shown, the expropriator has considerable discretion as to the precise property to be taken. In State v. Jeanerette Lumber & Shingle Co., 350 So.2d at 863, the court held that “the delegation of the power of eminent domain by the State to the expropriator leaves largely to the latter’s discretion the location and area of the land to be taken[.]” In Red River Waterway Comm’n v. Fredericks, 566 So.2d at 83, the court described the expropriator’s discretion as “large.” Most recently, in ExxonMobil Pipeline Co. v. Union Pacific R. Co., supra at 12, 35 So.3d at 200, the court reiterated that “the extent and the location of property to be expropriated are within the sound discretion of the expropriation authority!.]” In light of this authority, we find no merit in the argument that the district court misapplied the proper legal standard.
The Nunleys correctly show that the expropriator must act in good faith and consider factors such as costs, environmental impact, long-range area planning and safety considerations. Red River Waterway Comm’n v. Fredericks, supra. They contend that the court committed manifest error in finding that Acadian considered these, in light of the existence of a workable alternative route and the absence of documentation to support the selection of *464 the route across the subject tract such as photos, field notes, cost estimates and interviews with landowners.
On close examination, we find the district court correctly followed the method and analytical framework provided in Exx-onMobil, supra. There, the district court denied ExxonMobil’s petition to expropriate an 1 ^access road; the court of appeal affirmed, noting only that the record was “devoid of evidence” of a public purpose. ExxonMobil Pipeline Co. v. Union Pacific R. Co., 2008-2347 (La.App. 1 Cir. 5/13/09), at p. 5, 15 So.3d 246, 249. The dissenting judge argued that the plaintiff presented testimony proving a necessary purpose and “safety considerations regarding the location of the access road.” Id. at 2, 15 So.3d at 251 (Kuhn, J., dissenting).
The supreme court reversed, ordering the expropriation. After setting out the legal principles quoted above, the court analyzed the record. Specifically, the court discussed the testimony of the plaintiffs senior staff right-of-way and claims agent, a Mr. Saltaformaggio. The court recounted this testimony extensively, devoting five Tong paragraphs that we will not belabor. Notably for our purposes, the court mentioned not one piece of documentary evidence, and did not suggest that Mr. Saltaformaggio used any at trial. Rather, the court analyzed and accepted his explanation that, e.g., building the road over designated wetlands, ditches or access canals was undesirable. In this regard, Mr. Saltaformaggio’s testimony closely resembles Mr. May’s, both in vocabulary and persuasive force.[2]
The clear implication of the supreme court’s method and analytical framework is that testimony alone may suffice to prove that the expropriator considered the factors of Red River Waterway Comm’n v. Fredericks, supra. Other courts have also utilized testimony rather than “hard data” to find 113compliance with the expropriation criteria. Calcasieu-Cameron Hosp. Serv. Dist. v. Fontenot, supra; Illinois Central R. Co. v. 16.032 Acres of Land, supra. We find no manifest error in the district court’s decision to accept Mr. May’s testimony even without documentary evidence such as photos, field notes, cost estimates or interviews.
The Nunleys additionally contend that the court erred in confusing the dilatory issue of “good faith negotiations” with the merit-based issue of a “bad faith” exercise of expropriation authority. For the reasons just discussed, we do not find that Acadian exercised its authority in bad faith, or without consideration or adjustment with reference to principles, circumstances or significance. Also, while Acadian’s conduct may not have been an exemplar of legal negotiation, a single offer may be sufficient to constitute good faith. Texas Gas Transmission Corp. v. Pierce, 192 So.2d 561 (La.App. 3 Cir. 1966). This argument lacks merit.
 By their second assignment, the Nunleys urge the court erred in failing to impose a negative presumption arising from Acadian’s failure to preserve or produce the hard data supporting its route selection. It argues the rule of spoliation stated in Allstate Ins. Co. v. Ford Motor Co., supra, and numerous other cases: when a litigant destroys, conceals or fails to produce evidence within his or her control, this gives rise to an adverse presumption that had the evidence been produced, *465 it would have been unfavorable to the litigant. The law is settled, however, that when the failure to produce the evidence is adequately explained, the presumption does not apply. See Hanks v. Entergy Corp., 2006-477 (La.12/18/06), 944 So.2d 564, fn. 5; Critton v. State, 43,328 (La.App. 2 Cir. 6/4/08), 986 So.2d 207, writ denied, 2008-1493 (La.10/3/08), 992 So.2d 1019.
The district court did not abuse its discretion in accepting Mr. May’s explanation that the hard data sought by the Nunleys never existed. Moreover, the duty to preserve evidence is enforceable if it arose from a statute, contract, special relationship between the parties or an affirmative agreement or undertaking to preserve the evidence. Wilhite v. Thompson, 42,395 (La.App. 2 Cir. 8/15/07), 962 So.2d 493, writ denied, 2007-2025 (La.2/15/08), 976 So.2d 175, and citations therein. The Nunleys have not cited any statute or contract requiring Acadian to maintain the kind of records requested. Even though their expert testified that in a project of this size, failure to document the route selection process would be engineering malpractice, he did not establish any special relationship or affirmative agreement between the parties. The district court did not abuse its discretion in failure to apply a negative presumption based on spoliation. This assignment of error lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the appellants, Dr. Pierce Nunley and Susan Moody Nunley.
AFFIRMED.

. The court expressed its personal agreement with Justice Knoll's dissent in ExxonMobil.

. By contrast, the expropriators' evidence was qualitatively inferior in cases like State v. Estate of Griffin, supra, in which the state relied on a “projected” traffic count that was discredited even by the state’s own expert, and the Florida cases cited in brief, in which the plaintiffs’ experts admitted not considering the expropriation factors.