STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-484


JOHNNY WIMBLEY, ET AL

VERSUS

MCLINEY CENTERS, L.L.C., ET AL


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 266,329
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Van H. Kyzar, Judges.


REVERSED AND REMANDED.

**Frank X. Neuner, Jr.**
**Katelyn B. Courville**
**Robert D. Guidry**
**NeunerPate**
**One Petroleum Center, Suite 200**
**Lafayette, LA 70503**
**(337) 237-7000**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **McLiney Centers, L.L.C. D/B/A Sutherland's Home Base**
    **Edward Acevedo**
    **Travelers Property Casualty Company of America**
    **Travelers Indemnity Company**

**Brian T. Butler**
**C. Reynolds LeBlanc**
**Keogh, Cox & Wilson**
**701 Main Street**
**Post Office Box 1151**
**Baton Rouge, LA 70821**
**(225) 383-3796**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **McLiney Centers, L.L.C. D/B/A Sutherland's Home Base**
    **Edward Acevedo**
    **Travelers Property Casualty Company of America**
    **Travelers Indemnity Company**

**Brian M. Caubarreaux**
**Emily Gremillion**
**Brian Caubarreaux and Associates**
**144 West Tunica Drive**
**Post Office Box 129**
**Marksville, LA 71351**
**(318) 253-0900**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Johnny Wimbley**
    **Marie Wimbley**

**KYZAR, J.**

Defendants, McLiney Centers, L.L.C. D/B/A Sutherland's Home Base (Sutherland's), Edward Acevedo, Travelers Property Casualty Company of America, and Travelers Indemnity Company, appeal the judgment of the trial court granting Plaintiffs', Johnny Wimbley and Marie Wimbley, Motion for Spoliation of Evidence and thereby casting an adverse presumption against Defendants in favor of Plaintiffs that Mr. Wimbley was instructed by his supervisor to climb onto the forks of a forklift to rearrange merchandise on the date of the accident. For the following reasons, we reverse, and remand.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of an April 23, 2019, work-related accident sustained by Plaintiff, Mr. Wimbley, when he fell after being lifted on the forks of a forklift that was being utilized to raise Mr. Wimbley approximately ten feet in the air so he could reposition a piece of equipment on a shelf. As Mr. Wimbley stepped off the forklift onto the shelf, the boards of the shelf gave way, causing him to fall. Mr. Wimbley was employed by Sutherland's and was working in the course and scope of his employment when the accident occurred. At the time of the accident, Mr. Wimbley's supervisor, Mr. Acevedo, was operating the forklift and Mr. Wimbley was not utilizing a safety harness. As a result of this accident, Sutherland's began paying Mr. Wimbley workers' compensation benefits.

On May 31, 2019, Plaintiffs' attorney forwarded a letter to Sutherland's requesting video footage of the incident. Sutherland's responded that they were not in possession of the requested video, as their video system automatically records over video after seventeen days. Therefore, any video from the accident was automatically recorded over by the time they received Plaintiffs' request.

On September 26, 2019, Plaintiffs filed this suit for damages against Mr. Acevedo and Sutherland's, asserting that Mr. Acevedo and Sutherland's "intentionally did not provide the proper equipment and/or follow proper safety procedures to be used in connection with the work being performed by Johnny Wimbley and/or substantially contributed to the bodily harm that occurred." Plaintiffs further asserted that by requiring their employees to work without utilizing proper safety equipment, Mr. Acevedo and Sutherland's "were substantially certain that their actions and/or inactions would result in severe personal injury or death." Plaintiffs allege that the injuries sustained by Mr. Wimbley were caused by an intentional tort, as contemplated by Louisiana law.[1]

Defendants filed a motion for summary judgment seeking a dismissal of all claims asserted against them on the basis that Plaintiffs' exclusive remedy was under the workers' compensation laws. Plaintiffs filed a motion for spoliation of evidence based on the failure of the Defendants to provide Plaintiffs with surveillance video of the accident.

The hearing on Defendants' motion for summary judgment was held on November 7, 2022, after which the court granted the motion and dismissed all of Plaintiffs' claims against Sutherland's.[2] Plaintiffs appealed the trial court's grant of summary judgment. This court held there were genuine issues of material fact regarding whether Defendants knew, or should have known, that Mr. Wimbley's injuries were substantially certain to occur due to the actions of Mr. Acevedo. As

---

[1] Plaintiffs added Travelers Property and Casualty Company of America and The Travelers Indemnity Company as the liability insurers for Sutherland's by a First Supplemental and Amending Petition.

[2] The original motion for summary judgment was only filed on behalf of Sutherland's. A subsequent motion for summary judgment on behalf of Edward Acevedo, Travelers Property Casualty Company of America, and The Travelers Indemnity Company was heard on February 6, 2023, and granted by the trial court.

2

such, this court reversed the trial court's grant of summary judgment and remanded this matter back to the trial court to address Plaintiffs' motion for spoliation and for trial.[3]

The hearing on the Plaintiffs' motion for spoliation of evidence was held on May 13, 2024. Following the hearing, the trial court granted Plaintiffs' motion and imposed an adverse presumption against Defendants that, "Mr. Wimbley was instructed by the defendant to climb onto the forks of a forklift to rearrange merchandise on the date of the incident from which this suit arises."

Defendants have appealed the trial court's ruling and have assigned the following assignments of error:

1. The trial court erred in ordering an adverse presumption based on intentional spoliation.

2. The trial court erred in accepting Elizabeth Wilson's deposition testimony, despite being contradicted by three other employees' deposition and affidavit testimony.

## OPINION

In *BancorpSouth Bank v. Kleinpeter Trace, L.L.C.*, 13-1396, pp. 37–39 (La.App. 1 Cir. 10/1/14), 155 So.3d 614, 639–40, *writ denied*, 14-2470 (La. 2/27/15), 159 So.3d 1067, the court explained the doctrine of spoliation of evidence and the application of an adverse presumption by stating:

> Spoliation of evidence generally refers to an intentional destruction of evidence for the purpose of depriving opposing parties of its use. *McCleary v. Terrebonne Parish Consolidated Government*, 2009–2208, p. 2 (La.App. 1st Cir. 9/30/10), 2010 WL 3822225 (unpublished opinion), *writ denied*, 2010–2807 (La.2/11/11), 56 So.3d 1003. The theory of spoliation of evidence has its roots in the evidentiary doctrine of "adverse presumption," which allows for a jury instruction to be given that the destroyed evidence is presumed to have contained information detrimental to the party who destroyed the evidence unless such destruction is adequately explained. *Robertson v.*

---

[3] *Wimbley v. McLiney Centers, L.L.C.*, 23-305 (La.App. 3 Cir. 12/6/23), 374 So.3d 1177, *writ denied*, 24-44 (La. 3/12/24), 381 So.3d 51.

3

*Frank's Super Value Foods, Inc.*, 2008–592 (La.App. 5th Cir.1/13/09), 7 So.3d 669, 673. The evidentiary doctrine of "adverse presumption" was applied by the Louisiana Supreme Court as early as 1910 in *Varnado v. Banner Cotton Oil Co.*, 126 La. 590, 590–592, 52 So. 777, 777–778 (910), wherein the Court applied the maxim "*omnia praesumuntur contra spoliatorem*," holding that the refusal of the managers of a corporation to produce the corporate books to interested stockholders justified a court and jury to draw "the most unfavorable inference, consistent with reason and probability, as to the nature and effect of the evidence which the opposite party has been precluded from using and examining as a means for the discovery of the truth."

Thus, as previously recognized by this court, when a litigant fails to produce evidence within his reach, a presumption that the evidence would have been detrimental to his case is applied, unless the failure to produce the evidence is adequately explained. *Paradise v. Al Copeland Investments, Inc.*, 2009–0315 (La.App. 1st Cir.9/14/09), 22 So.3d 1018, 1027; *Randolph v. General Motors Corporation*, 93–1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, 1026, *writ denied*, 95–0194 (La.3/17/95), 651 So.2d 276. One explanation for failure to produce evidence that has been deemed reasonable is the situation where suit has not been filed and there is no evidence that a party knew suit would be filed when the evidence was discarded, such that the need for the evidence was not foreseeable. Under those circumstances, the theory of spoliation of evidence does not apply. *See generally Higgins v. Richard*, 2008–2504, p. 4 (La.App. 1st Cir.6/12/09), 2009 WL 2486892 (unpublished). On the other hand, when a party has notice that certain evidence within its control is relevant to pending or imminent litigation, the party has an obligation to preserve the evidence. *Everhardt v. La. Department of Transportation & Development*, 2007–981 (La.App. 4th Cir.2/20/08), 978 So.2d 1036, 1044.

The appellate standard of review for a trial court's decision of whether an adverse presumption for spoliation of evidence should be imposed is whether the trial court abused its discretion. *See Paradise*, 22 So.3d at 1028; *Acadian Gas Pipeline System v. Nunley*, 46,648 (La.App. 2nd Cir.11/2/11), 77 So.3d 457, 465, *writ denied*, 2001–2680 (La.2/10/12), 80 So.3d 487.

In *Dauzat v. Dolgencorp, LLC*, 15-1096 (La.App. 3 Cir. 4/6/16), 215 So.3d 833, *writ denied*, 16-832 (La. 6/17/16), 192 So.3d 766, the plaintiffs brought suit asserting that they had been wrongfully accused of shoplifting at a Dollar General store. The day after the incident, the store received a letter on behalf of the plaintiffs requesting a copy of the store's video camera surveillance footage regarding the incident. The store provided some surveillance footage, but not for all of the

4

applicable time period. The plaintiffs asserted they were entitled to an adverse

presumption for the spoliating of evidence. The store, in disputing the spoliation

claim, stated that their surveillance system automatically recorded over the video

prior to receiving the plaintiffs' discovery request and there was no evidence they

intentionally destroyed the video for the purpose of depriving the plaintiffs of its use.

The trial court ruled that the plaintiffs were entitled to an adverse presumption based

on the store's destruction of the video evidence. In affirming the trial court's

decision, this court explained:

> "Louisiana jurisprudence holds that when a litigant destroys, conceals, or fails to produce evidence within his or her control, it gives rise to an adverse presumption that had the evidence been produced, it would have been detrimental to the litigant's case." *Allstate Ins. Co. v. Ford Motor Co.*, 00–710, p. 4 (La.App. 3 Cir. 11/2/00), 772 So.2d 339, 342. "The appellate standard of review for a trial court's evidentiary ruling on [the] issue [of spoliation] is whether the trial court abused its broad discretion." *Carter v. Hi Nabor Super Market*, 13–529, p. 9 (La.App. 1 Cir. 12/30/14), 168 So.3d 698, 704–05, *writ denied*, 15–190 (La.4/17/15), 168 So.3d 399.

> At trial, Plaintiffs presented evidence suggestive of the fact that Defendants allowed for spoliation of video evidence. Defendants failed to preserve video camera footage after 3:00 p.m.; thus, Plaintiffs contend that this constituted spoliation of the evidence.

> The trial court made its pronouncement relative to spoliation of evidence within the context of its ruling on Plaintiffs' false imprisonment claims:

>> [D]efendant, [Dollar General] knowledge of the pending claims, failed to preserve the surveillance video reflecting the events that unfolded after 12:31 o'clock p.m. on the day in question. It is this unexplained spoliation of evidence (i.e. the destruction of surveillance video depicting events occurring after 12:31 o'clock p.m.), coupled with the fact that Amanda Poarch failed to appear at trial to explain and/or justify the 911 call made by her that causes great concern to the trial court.

> The record reflects that Defendants acknowledge receipt of Plaintiffs' letter dated April 15, 2014. This letter requested a copy of the video camera's surveillance footage from April 14, 2014. Defendants admitted that Plaintiffs were given a compact disc which contained footage from April 14, 2014; however, it was for a two and a

half hour period not inclusive of 3:00 p.m. and what occurred afterwards. Defendants contend that the closed circuit television system retains footage for one and a half months, and, when Plaintiffs' discovery requests were received in November 2015, the footage had been automatically recorded over.

Plaintiffs assert that Defendants produced footage of only part of the incident in response to Plaintiffs' request. According to Plaintiffs, because Defendants knew of their impending lawsuit and failed to produce video evidencing the entire time Plaintiffs were being interrogated, the application of the spoliation presumption against Defendants was warranted. We agree.

We find no abuse in the trial court's broad discretion in applying the adverse evidentiary presumption under the theory of spoliation of evidence against Defendants herein. The trial court's ruling is based in part on the fact that Dollar General failed to preserve the surveillance video. The trial court was also critical of Ms. Poarch's absence at trial. Given these circumstances, we do not find that the trial court abused its broad discretion in applying the presumption herein.

*Id.* at 842–43.

"[T]he abuse of discretion standard is highly deferential to the trial court unless the court exercised its discretion based upon an erroneous view of the law or a clearly erroneous view of the facts." *Tran v. Collins*, 20-246, p. 5 (La.App. 4 Cir. 8/20/21), 326 So.3d 1274, 1279, (citing *Show & Tell of New Orleans, L.L.C. v. Fellowship Missionary Baptist Church*, 2014-0843, p. 2 (La.App. 4 Cir. 12/17/14), 156 So.3d 1234, 1237).

In explaining what constitutes an abuse of discretion, the court in *Torrance v. Caddo Par. Police Jury*, 119 So.2d 617, 619 (La.App. 2 Cir. 1960), stated:

Generally an abuse of discretion results from a conclusion reached carpiciously [sic] or in an arbitrary manner. 'Capriciously' has been defined such as 'a conclusion of a commission when the conclusion is announced with no substantial evidence to support it to a conclusion contrary to substantiated competent evidence.' 12 C.J.S. verbo Capriciously, p. 1137. The word 'arbitrary' implies 'a disregard of evidence or of the proper weight thereof.' 6 C.J.S. verbo Arbitrary, p. 145.

There was no live testimony taken during the hearing on the motion for spoliation of evidence. The evidence presented at the hearing included the deposition testimony of Mr. Wimbley, the deposition of Ms. Wilson, the deposition testimony of two of Sutherland's employees, the affidavit and deposition of Juan Cruz, a manager at Sutherland's, and the May 31, 2019 letter from Plaintiffs' attorney requesting the surveillance video of Mr. Wimbley's accident. This evidence established that Sutherland's did not have written policies or procedures regarding the preservation of warehouse video. The video system had a maximum storage capacity of seventeen days, at which time the video is recorded over. Therefore, by the time the request for the video was received, it had been automatically recorded over.

The evidence included several contested matters. This included Mr. Wimbley's assertion that he was ordered by Mr. Acevedo to ride the blades of the forklift to adjust the equipment. Mr. Acevedo contended that Mr. Wimbley pled with him to ride the forklift blades and Mr. Acevedo reluctantly agreed to let him do so against his better judgment.

Regarding the actual existence of any video surveillance of the accident, Mr. Cruz supplied deposition testimony and an affidavit that the surveillance camera in the warehouse that would have captured the accident was not functioning at the time of the accident, and thus there was no actual video. To dispute this allegation, the Plaintiffs presented the deposition testimony of a former employee, Ms. Wilson, which indicated she watched a video of the accident with co-employees, Mr. Armstead and Mr. Piper. However, both Mr. Armstead and Mr. Piper, in their deposition testimony, denied ever seeing any video of the accident. Additionally, Mr. Cruz in his affidavit averred that Sutherland's employment records proved that

7

both Mr. Armstead and Mr. Piper had already clocked out of work and left the premises by the time Ms. Wilson allegedly watched the video with them.

In granting the Plaintiffs' motion for spoliation of evidence, the trial judge stated,

> Okay, the matter before the Court is a Motion for Spoliation of Evidence, and there are three (3) criteria that have to be met before the Court can grant that Motion. One, is the duty to preserve the evidence. The Court finds that there was a duty to preserve the evidence. There were photos that were taken and evidence was being collected, and photos were preserved. And there is possibly this video that was out there, according to the employee, Elizabeth Wilson. But yet, photos and videos are two (2) forms of capturing what happened. So photos were preserved, which captured whatever the photos captured, whatever is reflected in the photos. So the video would be same type of evidence. It would captured whatever it captured and it wasn't preserved. But I feel like it was a duty to preserve that. If you're going to preserve one form of evidence, why not preserve the other.

> Number Two, whether it was intentionally destroyed, the evidence was intentionally destroyed. It was intentionally destroyed to the extent that that the Defendant allowed it to be overwritten. You knew it- - there was a video. You knew the policy, where it's overwritten, the video just keeps recording, keeps recording and keeps recording. So you all allowed it to be overwritten. And as far as this Court is concerned, that was intentional.

> And Number Three, was destroyed evidence for the purpose of - - was destroyed evidence for the purpose of preventing the Plaintiff from having access to it. So the - - and the Court finds that that was - - that happened. Because this video could be very crucial, although I understand there was no audio, and we won't ever- - we would never know what exactly they were saying, only a lip reader would - - could be able to tell what they were saying. And who knows, they might have would have got somebody to read lips and to say what they were saying to one another. However, we don't have a video for them to even have an opportunity to do that.

> And also, we don't have a video. We have other forms of speaking. Body language says certain things. We don't know what was on the video now, at this point. We don't know what was on the video now, at this point. We don't know if the body language would have reflected the Supervisor telling Mr. Wimbley. Yeah, calling him over, telling him to get on top. We don't - - we don't know, because we don't know, because we don't have a video.

> So, because we don't have a video, we can't just automatically say it was no audio on it, and we're not going to hear what they say. I

understand that, but we still don't know what the body language was speaking.

So the Court will grant the Motion for Spoliation.

Following the trial judge's oral ruling, Defendants' attorney asked for clarification of what the adverse presumption would be from the spoliation ruling. The trial judge responded, "The inference is going to be that he was instructed to get on the forklift." Defendants' attorney then questioned whether the judge was going to rule that the video would have shown that Mr. Wimbley was instructed to get on the fork lift in spite of the fact there was no audio. The judge responded, "You all don't - - I mean, you all don't have it. Mr. Wimbley says he was instructed. The video, I feel, would have reflected whatever it reflected, but I can't tell at this point. But that's what their request for."

The evidence presented at the hearing was conflicting as to whether there was ever any video of the accident at all. Mr. Cruz testified in his deposition that there was no surveillance video of the accident because the camera that covered that part of the warehouse was not working on the day of the accident. The only contradiction to this was Ms. Wilson's deposition testimony that she watched a video of the accident with Mr. Armstead and Mr. Piper. However, both Mr. Armstead and Mr. Piper denied they had ever seen any video of the accident. Additionally, there was evidence that neither Mr. Armstead nor Mr. Piper were even at work when Ms. Wilson alleged she watched the video with them.

We find that the trial judge abused its discretion in granting the motion by accepting Ms. Wilson's deposition testimony as true regarding the existence of the video and totally rejecting Sutherland's employees' depositions and affidavit evidence thus effectively finding that Defendants intentionally destroyed or failed to preserve the contested surveillance video. During her oral ruling, the trial judge

9

stated, "And there is possibly this video that was out there, according to the employee, Elizabeth Wilson." That there is a possibility of the existence of the video is insufficient to trigger an adverse spoliation instruction. There must be a finding that the video actually existed. *Acadian Gas Pipeline Sys. v. Nunley*, 46,648 (La.App. 2 Cir. 11/2/11), 77 So.3d 457, *writ denied*, 11-2680 (La. 2/10/12), 80 So.3d 487. The questions only then become whether it was intentionally destroyed or concealed and the reasons therefore. While the judgment of the trial court may implicitly indicate such a finding, the deposition testimony and affidavit evidence together with the time records directly dispute this.

In order to make the determination that a video exists at all depends on whether the trier of fact credits the deposition testimony of Ms. Wilson and rejects in full the deposition testimony of Mr. Armstead, Mr. Piper, and Mr. Cruz, as well as the affidavit of Mr. Cruz. The trial court was not in a position to make any credibility determinations here, as all of the evidence submitted in support of and in opposition to the motion was documentary. We find that based on the disputed facts in this matter resolution of the spoliation issue and whether a negative presumption applies should be decided by the trier of fact after seeing and hearing the witnesses testify.

It is indeed for the trier of fact, after seeing and hearing the witnesses, to judge the weight and credibility of the witness testimony. In making "determinations regarding the credibility of witnesses," deference is afforded to the trier of fact's findings "for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). This obviously requires that the trier of fact see and hear the witnesses, which is not possible when viewing deposition or affidavit evidence. In *Cawthorne v. Fogleman*, 12-870, pp. 8–9

10

(La.App. 3 Cir. 2/6/13), 107 So.3d 906, 912, *writ denied*, 13-501 (La. 4/12/13), 111 So.3d 1011, this court explained the advantage of seeing and hearing a live witness rather than having to utilize a deposition in assessing the credibility of the witness as follows:

> The trial court abused its discretion in permitting the use of Fogleman's deposition. His live appearance was crucial for the jury to weigh the credibility of his testimony rather than glean what happened the day of the accident from the cold record of his deposition. Where there is such a crucial conflict in testimony, the jury's core means of making reasonable evaluations of credibility and reasonable inferences of fact comes from witnessing live testimony. The use of a deposition in lieu of a key party testifying should not be taken lightly.

Accordingly, we reverse the ruling of the trial, and the case is remanded for further proceedings.

## DECREE

For the foregoing reasons, the judgment of the trial court in granting the Plaintiffs' motion for spoliation of evidence is reversed and the case is remanded for further proceedings. Costs of this appeal are assessed to Plaintiffs/Appellees.

**REVERSED AND REMANDED.**